## FRANK KLINE v. H. E. BYRAM AND OTHERS.[1]

July 22, 1927.

No. 26,155.

**Verdict for $12,500 not excessive for injuries to railway mechanic at work in roundhouse.**

In this action brought by an employe of the operators of a steam railway for injuries occasioned by the negligence of a fellow servant, it is *held*:

[1] The evidence sustains the verdict as to negligence for which defendants were responsible; and it does not appear, as a matter of law, that plaintiff assumed the risk; nor does the evidence conclusively show that plaintiff's negligence was the sole cause of his injuries.

[2] No reversible error is found in the reception of testimony.

[3] In view of the negligence of defendants being based upon the act of one employe, requested instructions based on failure of plaintiff to impart information to another employe who had no part in that act were rightly refused. There was no error in the refusal of other requests or in the charge as given.

[4] The verdict is not excessive.

Appeal and Error, 4 C. J. p. 847 n. 12, 14.
Damages, 17 C. J. p. 1022 n. 33; p. 1091 n. 85.
Master and Servant, 39 C. J. p. 654 n. 51; p. 1096 n. 60; p. 1179 n. 75; p. 1199 n. 43; p. 1220 n. 71; p. 1240 n. 24; p. 1247 n. 75.
Trial, 38 Cyc. p. 1613 n. 16; p. 1711 n. 19.

---

See note in L. R. A. 1915F, 30; 46 A. L. R. 1230; 8 R. C. L. 674; 1 R. C. L. Supp. 638; 4 R. C. L. Supp. 567; 5 R. C. L. Supp. 480; 6 R. C. L. Supp. 521.

[1]Reported in 214 N. W. 890.

Defendants appealed from an order of the district court for Dakota county, Albert Johnson, J., denying their alternative motion for judgment or a new trial. Affirmed.

*F. W. Root, C. O. Newcomb, A. C. Erdall,* and *Gillitt & Gillitt,* for appellants.

*Miner & McDonald,* for respondent.

HOLT, J.

The appeal is from an order denying defendants' motion in the alternative for judgment non obstante veredicto or a new trial.

[1] The action was to recover damages for bodily injuries plaintiff received in defendants' employ through their alleged negligence. Defendants, as receivers of the Chicago, Milwaukee & St. Paul Railway Company, were operating that railway in this state, and for that purpose used a roundhouse in Minneapolis. This roundhouse was equipped with 46 stalls. Under each stall was a pit to facilitate such ordinary repair work and adjustment as might be needed on a locomotive after each run. The locomotive involved in the injury to plaintiff had been set in on stall No. 1 on the night in question. By each stall is a standard containing a placard showing what repairs and adjustments are to be made. When these are made the mechanic making them is supposed to sign the placard, the mechanic having previously thereto received from the office a "yellow slip" showing what work is to be done.

Plaintiff had received a slip directing him to adjust the screws on the driver brake under the locomotive and put a new brake hanger under the left No. 3 wheel of the tender. Plaintiff approached the stall at about 3:30 o'clock in the morning of October 14, 1925, to do this work. Another employe, Knappik, with a helper, Hess, were there. Their duty was to test out the brakes and adjustments before a locomotive leaves the stall for its run. Knappik and plaintiff worked independently of each other: The locomotive needed to be "fired" and be "hot" before the work could be done which both Knappik and plaintiff had to do. In the roundhouse is a blackboard showing the number of each locomotive, the

stall where it is, and also when it is "hot". Knappik asked plaintiff what work he was to do and was told he was to adjust the brake screws, but the putting on of the hanger on the left No. 3 wheel of the tender was not mentioned. Plaintiff could not adjust the brake screws unless someone operated the brake lever in the cab and, as plaintiff's helper was not there, Knappik offered to work the lever, mounted the cab, and plaintiff went into the pit. At the latter's command, Knappik set and released the brakes as required. When he ceased to hear further directions from plaintiff, Knappik stepped down from the cab. Hess at once took the seat vacated by Knappik and set the brakes, without receiving any direction from either plaintiff or Knappik, as the jury could find. The brake lever and piston caught the head and shoulders of plaintiff, who was then at work on the brake hanger on the No. 3 left wheel of the tender, crushing his right lower jaw and inflicting injuries to his neck and shoulders.

If the jury could find negligence in the setting of the brake by Hess, defendants were not entitled to judgment notwithstanding, unless it could be said as a matter of law that plaintiff assumed the risk, or the evidence would compel a finding that plaintiff's negligence was the sole cause of his injuries. Although there is some testimony that tests of the air brakes might be made while work was being done by a machinist in the pit, there is also evidence of a custom not to make such tests while machinists were in the pit. Hess so testified, and further:

Q. "In making your test, when you come to an engine would you look to see if a machinist was working on the engine?" A. "Yes, sir." Q. "That was a custom that prevailed there at that time?" A. "Yes, sir."

Hess had seen plaintiff in the pit before he mounted the cab. He had no information as to what work plaintiff had to do upon the engine, nor that he had come out of the pit. And Knappik's testimony in a measure supports the contention of plaintiff that due and customary care required the testers to ascertain whether

plaintiff was out of the pit before undertaking to operate the brake lever in the cab. He testified that only upon his direction was Hess to set or release the brakes in making his tests; that when he descended from the cab he did not know where plaintiff was; that he gave no direction to Hess to set the brakes; and that the latter did set them directly after Knappik stepped off. Further, that if he had known that plaintiff was out of the pit he would have set the brakes before leaving the cab; that he did not do so because of uncertainty as to where plaintiff was at the time. Obviously, a person working on a locomotive and tender from its stall pit would be exposed to dangers from the operation of the levers and appliances of their powerful brake system. We do not think the court erred in submitting the question of defendants' negligence, they being responsible for the negligence of their servant Hess—the old fellow servant rule being abrogated as to persons employed in the operation of steam railways.

Nor can it be said as a matter of law that plaintiff assumed the risk of being caught by someone's negligent and unbidden operation of the brakes. He knew that both Knappik and Hess knew that he went into the pit to do some work, and could expect that the usual custom and ordinary care would be observed by them for his protection. In Chesapeake & Ohio Ry. Co. v. De Atley, 241 U. S. 310, 36 S. Ct. 564, 60 L. ed. 1016, the court states:

"According to our decisions, the settled rule is, not that it is the duty of an employee to exercise care to discover extraordinary dangers that may arise from the negligence of the employer or of those for whose conduct the employer is responsible, but that the employee may assume that the employer or his agents have exercised proper care with respect to his safety until notified to the contrary, unless the want of care and the danger arising from it are so obvious that an ordinarily careful person, under the circumstances, would observe and appreciate them." Chesapeake & Ohio Ry. Co. v. Proffitt, 241 U. S. 462, 36 S. Ct. 620, 60 L. ed. 1102.

We have also held that a railway employe does not assume the risk of injury from a fellow servant's negligence. Thompson v.

M. & St. L. R. Co. 133 Minn. 203, 158 N. W. 42; Lancette v. G. N. Ry. Co. 140 Minn. 488, 168 N. W. 634.

Appellants cite G. N. Ry. Co. v. Wiles, 240 U. S. 444, 36 S. Ct. 406, 60 L. ed. 732; Frese v. C. B. & Q. R. Co. 263 U. S. 1, 44 S. Ct. 1, 68 L. ed. 131; Davis v. Kennedy, 266 U. S. 147, 45 S. Ct. 33, 69 L. ed. 212. In the first case Wiles neglected the duty which was his to protect his train, stalled in transit, and because thereof another train collided therewith, killing Wiles, who had remained in the caboose. In the other two the accident which caused the employe's injury or death resulted from such employe's failure to perform a duty which was primarily his. Illinois Cent. Ry. Co. v. Skaggs, 240 U. S. 66, 36 S. Ct. 249, 60 L. ed. 528, is not authority for appellants, but rather for the proposition that they were liable for the negligence of Hess.

Defendants also contend that plaintiff's own negligence was the sole proximate cause of his injury. We do not understand this contention seriously to be made upon the ground that the position plaintiff was in when hurt was improper or negligently assumed, but because he failed to inform Knappik of all the work he was to do in the pit. It was the negligence of Hess, who had received no information from plaintiff, that caused the injury. In that situation it cannot be held that this failure to disclose all he had to do to Knappik was the sole cause of his being caught when, without direction and without knowing that plaintiff was out of the pit, Hess set the brakes.

[2] Errors are assigned in respect to rulings on the admission of the testimony of medical experts based in part on X-rays taken of the spine between the shoulders, one contention being that no issue of the fracture of any other bone than that of the jaw was made by the pleadings, and another that the abnormal condition of the spinal processes indicated by the X-rays was due to arthritis and not the result of the accident. The complaint alleged that he was hurt "both externally and internally, in and about his entire body;" also that the neck and shoulders were injured so that he was unable to bend or move the neck freely or raise either arm to

any great extent, and that his back was wrenched, strained and sprained. The doctor for plaintiff did not attribute the entire abnormal condition found in the spinal processes to the accident, but gave as his opinion that the arthritis which may have previously existed and started the abnormalities was aggravated by the injury received. The experts for defendants see no connection between the injury and the present diseased processes of the spine shown by the X-rays. We think the pleading authorized the reception of the evidence touching injury to the spinal processes, and whether there was sufficient foundation for plaintiff's expert to express an opinion as to the causal connection between the injury and the condition of such processes as indicated by the X-rays was for the trial court.

[3] The appellants requested the court to instruct, in substance, that they could not be found guilty of negligence if plaintiff did not inform Knappik that he was also to work upon the tender; also, that if plaintiff, knowing that the test-out man might set the brakes, placed himself in danger he assumed the risk; and further, that plaintiff assumed the risks arising from an additional hazard which he might avoid by not taking the easiest and quickest way of doing his work. It has already been stated that what plaintiff told or failed to tell Knappik had no bearing on the negligent act of Hess. So the first requested instruction would not have been applicable. The second begs the question, for there is no proof that plaintiff knew or suspected that Hess or anyone else might set the brake before he, plaintiff, came out of the pit, or without warning. There was no issue made at the trial of whether or not plaintiff in attempting to do the work he was ordered to do under the tender assumed any more hazardous position than ordinarily would be assumed in doing that work. A question or two put to him in cross-examination might tend in that direction, but there was no attempt by defendants to prove by expert testimony or otherwise that plaintiff could properly have done the work from any other point than the one he took. Of course, he could not stand where he stood without being caught if someone set the brakes. The only negligence of defendants in the case is to be found in the unbidden act of Hess

in setting the brakes when he knew that plaintiff was in the pit to do some work. We think the charge as given sufficiently covered that phase of the case, and also the general rule of assumption of risk.

[4] Plaintiff's expectancy of life was more than 12 years. His earnings before the injury were about $2,000 per year. His right lower jaw was badly fractured, several pieces of bone being removed and teeth lost, and infection set in involving the neck. The injury to the mouth was permanent, preventing the mouth from opening more than three-fourths of an inch. He has lost over 20 pounds in weight, is not able to do any ordinary labor, and his doctor was of the opinion that he never will be able to work as a machinist. His neck is stiff and shoulders and arms without strength and on attempts at use painful. More could be said about suffering and the effects of the accident, but this is enough to indicate that we may not hold the verdict of $12,500 excessive.

The order is affirmed.