## ELAINE J. ROEDER v. NORTH AMERICAN LIFE INSURANCE COMPANY OF CHICAGO.

106 N. W. (2d) 624.

December 9, 1960—No. 38,004.

*Atwood & Fletcher,* for appellant.
*Bensen & Bensen,* for respondent.

NELSON, JUSTICE.

Elaine J. Roeder brings this suit against the North American Life Insurance Company of Chicago to recover under a nonmedical examination insurance policy issued on the life of her husband, Charles B. Roeder, now deceased. The defendant by the terms and provisions of said policy agreed to pay the sum of $6,000 to Security Federal Savings and Loan Association, as their interest might appear, and to plaintiff upon the death of the insured.

During 1957, and prior to the issuance of the policy, the insured had begun the construction of a family home and was in need of financing. He had arranged for a loan with the Security Federal Savings and Loan Association and applied for insurance to cover the mortgage at the request of the said loan association. The policy was issued on July 18, 1957, and death occurred December 6, 1957.

These questions are presented for determination: (1) When does Minn. St. 61.24 effect an avoidance of nonmedical examination life insurance policies? (2) Were statements made by the insured in his application willfully false and intentionally misleading as a matter of law? (3) Must the provisions in the application and in the policy requiring the insured to be in sound health on the date of his application and on the date of issuance and delivery of the policy be construed as absolute conditions precedent to the taking effect of the policy under § 61.24?

In the instant case the application in effect required Roeder to answer certain questions to the best of his knowledge. It contained the following questions to which Roeder attached the following answers in writing:

"1. Does proposed insured have any impairment of sight or hearing? No

"2. Has proposed insured ever been told that he or she had abnormal blood pressure or heart ailment? No

"3. Has proposed insured even [sic] been told that he or she had sugar or albumin in his or her urine?   No

"4. Has proposed insured or any of his or her family ever had a mental disease, diabetes or tuberculosis?  No

"5. To what extent does proposed insured use alcoholic beverages? Very Little

"6. Has proposed insured ever used cocaine, morphine or other drugs?  No

"7. Has proposed insured ever been under observation or treatment in any institution?  No

"8. Has proposed insured ever had X-ray, electrocardiogram, blood or other special examination?  No

"9. What is height and weight of proposed insured?  5 Ft. 9 in. 150 Lbs.

Any gain or loss in the last year.

Gained 0 lbs. Lost 0 lbs.

"10. Is proposed insured, to the best of his or her knowledge and belief, in good health and free from deformity or defect?  Yes."

Section 61.24 reads:

"In any claim upon a policy issued in this state without previous medical examination, or without the knowledge or consent of the insured, or, in case of a minor, without the consent of his parent, guardian, or other person having his legal custody, the statements made in the application as to the age, physical condition, and family history of the insured shall be valid and binding upon the company, *unless wilfully false or intentionally misleading.* Every policy which contains a reference to the application, either as a part of the policy or as having any bearing thereon, shall have a copy of such application attached thereto or set out therein." (Italics supplied.)

This court has said in construing § 61.24 that a willfully false and intentionally misleading answer is one which is consciously made with a premeditated design so to falsify the facts as to lead the insurer to act when he otherwise would not; willfully false denotes knowingly concealed. See Schmidt v. Prudential Ins. Co. 190 Minn. 239, 251 N. W. 683, wherein the court said that the above statute announced a less harsh rule and prevents the avoidance of nonmedical examination policies on the ground of material misrepresentations as to age, physi-

cal condition, or family history, unless such misrepresentations are willfully false or intentionally misleading.

The record shows that the insured left high school when he had completed his junior year and immediately went to work building cabinets and constructing houses. He married in June 1950, two years after leaving high school. Following his marriage he opened and operated his own cabinet shop, built a number of homes, and also did work for the Great Northern Railway Company, the Schwartz Cabinet Company, and the Woodcraft Company. In addition to these activities he applied for and obtained an appointment as school bus driver and drove school buses from 1950 to 1955. In order to obtain an appointment as school bus driver he was required to take physical examinations and submit the same in acquiring a chauffeur's license yearly. He was examined by Dr. L. A. Veranth, the family's doctor, on September 10, 1952, and on August 24, 1954. Dr. Veranth was called as a witness by defendant company. His testimony disclosed that he found nothing the matter with Roeder physically with the exception that he discovered a systolic murmur at the apex of the heart, which he testified was not functional and constituted a finding which he considered insignificant and minor. He informed Roeder of the finding but concluded on those occasions that the finding was not of sufficient significance to cause a rejection of Roeder as a school bus driver. Dr. Veranth testified that he neither prescribed for nor otherwise advised Roeder in regard to it. The testimony stands uncontradicted that before these examinations, during the time of the examinations, and up until he was hospitalized shortly before his death, Roeder was never hospitalized and never absent from work on account of illness. The testimony indicates that he was ambitious, kept himself unusually busy, and sometimes worked as much as 17 and 18 hours a day.

Other than the two examinations already discussed, Dr. Veranth's record discloses only visits completely unrelated to the cause of death. According to the record no symptoms indicating that Roeder had a cough, dizziness, or chest discomfort were observed by his wife or those who worked with him daily before his hospitalization, which occurred shortly before his death. The jury might well find that Roeder honestly

believed that he had no disabilities of any consequence, or any which he recognized as such.

Dr. A. E. Davis, who performed an autopsy after Roeder's death, was called by defendant as a witness and testified that one suffering from the condition which he found to exist at the autopsy would perhaps have a cough, chest discomfort, dizziness, and tiredness on marked exertion, but could have *one, all, or none* of said symptoms. As already indicated none of those with whom Roeder worked up until his last illness, for whom he worked, or with whom he was otherwise closely associated saw any signs of the symptoms which Dr. Davis testified could have been present.

It was admitted by Dr. Davis that when Dr. Veranth examined Roeder and made no particular point of his findings it was possible that Roeder was thereby given a feeling of confidence in his physical condition.

The jury returned a verdict in favor of the plaintiff in the sum of $6,470, representing the face amount of the policy plus interest. Defendant thereafter moved for judgment notwithstanding the verdict and in the alternative for a new trial. This motion was denied and judgment entered. On appeal defendant seeks a reversal of this judgment contending that the verdict is contrary to law and is not sustained by the evidence.

Defendant contends that the trial court erred in the following matters: (1) In the improper withdrawal and submission of issues to the jury; (2) in the improper exclusion and reception of evidence; (3) in restriction of defendant's examination of witnesses; (4) in refusing defendant's requested instructions; (5) in excluding records from evidence on the grounds of privilege and in restricting defendant's cross-examination of plaintiff with respect to conversation with attending physician; (6) irregularity and abuse of discretion on the part of the trial court, which deprived defendant of a fair trial; (7) in misconstruing § 61.24 to deprive defendant of its legal rights.

The real issue, however, is whether the evidence shows as a matter of law that the insured's statements in his application for a non-medical insurance policy, under the circumstances, were willfully false or intentionally misleading.

■ We must give consideration to several well-settled principles of law. Where an appeal involves the sufficiency of the evidence to justify a verdict, the supreme court will take that view of the evidence most favorable to the party in whose favor the verdict was rendered, and the verdict will be sustained if it is possible to do so on any reasonable theory of the evidence. See, Vorlicky v. Metropolitan Life Ins. Co. 206 Minn. 34, 287 N. W. 109; 1 Dunnell, Dig. (3 ed.) § 415. Where the verdict has the approval of the trial court, the appellate court will interfere only if it is manifest that an injustice under the law has been done. Schleuder v. Soltow, 239 Minn. 453, 59 N. W. (2d) 320; Siemers v. United Benefit Life Ins. Co. 246 Minn. 459, 75 N. W. (2d) 605.

■ While defendant contends that the court improperly excluded records from evidence on the ground of privilege and unduly restricted defendant's cross-examination of plaintiff with respect to conversation with the attending physician, it has not furnished a concise statement as to the claimed errors. We have carefully examined the entire testimony of the doctors called to testify on behalf of the defendant. Dr. L. A. Veranth was permitted to testify fully as to what he had learned about Roeder's condition, his diagnosis, and other calls made by Roeder to his office. Dr. Vernon Neils, who attended Roeder during his last illness, was not called as a witness by either party. Dr. A. E. Davis, called by the defendant, had never treated Roeder nor to his knowledge seen him during his lifetime. While the report of the autopsy was not admitted in evidence, a reading of the record would indicate that defendant's counsel was permitted to go into all of the information therein important to defendant. The report contained numerous items not relevant to the defense.

The hospital records maintained during Roeder's last illness were offered through the medical records clerk of the hospital. These records and the autopsy report constituted a permanent file of the hospital. The patient's history had been written by his attending physician, Dr. Vernon Neils, and the physical examination, progress notes, and orders had been written by the same doctor.

Admission of the hospital records was objected to on the ground of privilege. At the trial plaintiff, widow of the deceased, refused to waive the privilege under § 595.02(4).

The hospital records also contained a report signed by Dr. E. N. Anderson, the hospital radiologist, of an X-ray taken November 4, 1954, and three X-rays taken during Roeder's last illness. Dr. Anderson did nothing but read X-rays and never treated Roeder as a patient. The court refused to admit these X-rays on the ground of lack of proper foundation. Dr. Veranth testified that he did not know whether the X-ray taken in 1954 was taken in connection with his examinations or at his suggestion or one made by Roeder himself. This not being clear and proof thereof lacking, the court overruled defendant's offer of that X-ray and indicated that further foundation was necessary. None was produced.

We have said that the discretion of the trial court as to the competency of expert witnesses and the subject matter as to which they testify will not be disturbed unless abused. McDonough v. Cameron, 116 Minn. 480, 134 N. W. 118; see, also, Kline v. Byram, 172 Minn. 284, 214 N. W. 890.

■ It appears to be clear under § 595.02(4) that unless the privilege is waived a physician cannot testify as to information acquired in attending his patient, and also that such privilege is not waived by the fact that a plaintiff testifies as to his condition at that time. See, Hilary v. Minneapolis St. Ry. Co. 104 Minn. 432, 116 N. W. 933. It is well established that § 595.02(4) is for the protection of the patient; he may waive the privilege and as a general rule those who represent him after his death may also for the protection of interests which they claim under him. See, McAllister v. St. Paul City Ry. Co. 105 Minn. 1, 116 N. W. 917; Olson v. Court of Honor, 100 Minn. 117, 110 N. W. 374, 8 L.R.A. (N.S.) 521, 117 A. S. R. 676, 10 Ann. Cas. 622.

This court in Brown v. St. Paul City Ry. Co. 241 Minn. 15, 26, 62 N. W. (2d) 688, 696, 44 A. L. R. (2d) 535, 547, adopted the rule that:

"* * * under M. S. A. c. 600 hospital records and charts, properly identified, are admissible *when not privileged* to prove *diagnosis, treatment, or medical history* of the patient *pertinent to the medical and surgical aspects of the case* but * * * [any] hearsay and self-

serving statements contained therein are not admissible to prove how an injury occurred, at least when offered by the patient." (Italics supplied.)

See, Boutang v. Twin City Motor Bus Co. 248 Minn. 240, 80 N. W. (2d) 30.

A certified copy of the proof of death was received over plaintiff's objection. Viewing the record as a whole we find no reversible error in the aforesaid rulings on the medical testimony or the hospital records.

■ Defendant contends that the court misconstrued § 61.24 and thereby deprived defendant of its legal rights. A reading of the record indicates that defendant sought to bring the case under § 60.85, which provides that no misrepresentation by the insured to procure insurance shall be deemed material or avoid the policy unless made with intent to deceive or defraud or unless the matter misrepresented increases the risk. Clearly, the facts of this case are governed by § 61.24 and not by § 60.85, although the latter was held applicable to reinstatement of lapsed life insurance policies issued on medical examinations in preference to § 61.24. See, Robbins v. New York Life Ins. Co. 195 Minn. 205, 262 N. W. 210, 872, modified on other grounds.

In Blazek v. North American Life & Cas. Co. 251 Minn. 130, 137, 87 N. W. (2d) 36, 42, where the court considered § 62.06 and § 60.85, this court said:

"* * * in cases arising under both sections, it appears to be the settled law that the general questions in an application calling for information concerning former ailments do not require the disclosure of ailments of a trivial, temporary, or unimportant nature, but only of a serious, dangerous, and permanent character. For this reason this court has been unwilling to hold that failure to record occasional visits to a doctor about apparently minor disturbances is a sufficient reason to deny recovery under these policies. Rather it has approved the action of the trial court in leaving it to the jury to determine the severity of the ailment and its effect upon the acceptance of the risk or the hazard assumed, even where treatment has been over a prolonged period of time or where death ensued.

"* * * were this court to hold as a matter of law that a disease or

disability is present on the basis of single isolated occurrences it would arrogate diagnostic powers which in many cases even medical science lacks."

In Schaedler v. New York Life Ins. Co. 201 Minn. 327, 276 N. W. 235, the insured failed to list visits to a chiropractor in his application when, in fact, he had seen one for a few backaches. This court held that occasional backaches did not constitute a prior injury and that the jury could find these disturbances so trivial and temporary as to be omitted from the application without affecting his rights under the policy.

In Schmidt v. Prudential Ins. Co. 190 Minn. 239, 244, 251 N. W. 683, 686, this court said:

"* * * We agree that the company has a right to protect itself against uninsurable risks and that such may be accomplished in part by a medical examination and by independent investigation before the issuance of the policy. Where, however, the insurance company chooses to issue nonexamination policies, it can only do so subject to our statute, * * *."

It was held in Pomerenke v. Farmers Life Ins. Co. 228 Minn. 256, 260, 36 N. W. (2d) 703, 706, that "A standard life insurance policy *issued without medical examination* is subject to § 61.24 and not to § 60.85." Other controlling cases are: Siemers v. United Benefit Life Ins. Co. 246 Minn. 459, 75 N. W. (2d) 605; Haan v. Palladium Nat. Life Ins. Co. 201 Minn. 135, 275 N. W. 689; Elness v. Prudential Ins. Co. 190 Minn. 169, 251 N. W. 183; Hafner v. Prudential Ins. Co. 188 Minn. 481, 484, 247 N. W. 576, 578.

We have carefully considered the record and examined all of the remaining assignments of error. We find nothing sufficiently prejudicial to constitute reversible error. An examination of the charge indicates that the matter was fully and fairly presented pursuant to § 61.24, and that defendant's counsel was granted the benefit of the closing argument. Some of the medical testimony presents a conflict. The case was clearly one for the jury, and we think there is ample evidence to sustain the verdict of the jury.

Affirmed.