## HENRIETTA H. SIEMERS v. UNITED BENEFIT LIFE INSURANCE COMPANY.[1]

March 2, 1956.

No. 36,698.

[1]Reported in 75 N. W. (2d) 605.

*Fortier & Wetzel,* for appellant.
*Gordon Rosenmeier* and *John E. Simonett,* for respondent.

FRANK T. GALLAGHER, JUSTICE.

Appeal from a judgment of the district court entered December 7, 1954, in favor of plaintiff, Henrietta H. Siemers, and against defendant, United Benefit Life Insurance Company. This action was commenced by plaintiff as the beneficiary of a life insurance policy purchased by her deceased husband, William Siemers, and is for the face amount of the policy with interest and costs.

On June 22, 1943, defendant insurance company issued a life insurance policy on the life of William Siemers in the sum of $2,500. The policy was renewable in five years. On June 22, 1948, William Siemers renewed the policy. The premiums were payable every six months with a 31-day grace period. The premium due on June 22, 1950, was not received by the insurance company until August 4, 1950, several days after the 31-day grace period had expired. As a result of this delay the insurance company held the premium check in suspension and sent an application for reinstatement to William Siemers, who filled out the application and sent it back to the defendant insurance company. On August 15, 1950, payment of the premium was accepted and the policy reinstated.

On the application submitted by the insurance company to William Siemers appears the statement: "To the best of my knowledge I am in sound health and since the issuance of this policy I have had no illnesses or injuries, and I have received no medical treatment, except as follows." Immediately under this sentence appear five column headings with blank space under each column heading. These column headings are spaced across the page from left to right; the first reads, "Nature of illness, injury or medical treatment (If none, please write 'none')." The next column heading is entitled "Date"; the next "Duration"; the next "Is recovery complete?"; and the final column is entitled "Names and addresses of all doctors consulted."

Underneath these column headings and in large letters William Siemers wrote the word "None." The only other information solicited on the application is the present occupation of the applicant, his weight, and present mailing address.

About a year and a half after the delayed premium had been accepted by the defendant insurance company, William Siemers died. Thereafter the company tendered to the plaintiff beneficiary the amount of premiums paid from the date of reinstatement of policy in the sum of $110.60, which payment she refused.

The case was tried before a jury, and the jury returned a verdict in favor of plaintiff in the sum of $2,744.16, representing the face amount of the policy plus interest. Thereafter the defendant insurance company moved for judgment notwithstanding the verdict and in the alternative for a new trial. This motion was denied and judgment was entered.

On appeal the defendant seeks a reversal of this judgment and assigns as error, among other things, that the evidence shows the verdict is contrary to law and that as a matter of law plaintiff is entitled to a verdict of only $110.60. The only issue is therefore, as stated by the defendant, whether the evidence shows as a matter of law that the insured, William Siemers, made statements in his application for reinstatement of his policy which were wilfully false or intentionally misleading.

At the outset we are confronted with several well-settled principles of law. Where an appeal involves the sufficiency of the evidence to justify a verdict, the Supreme Court will take that view of the evidence most favorable to the party in whose favor the verdict is rendered. The verdict will be sustained if it is possible to do so on any reasonable theory of the evidence. Vorlicky v. Metropolitan L. Ins. Co. 206 Minn. 34, 287 N. W. 109; see, also, 1 Dunnell, Dig. (3 ed.) § 415. Where the verdict has the approval of the trial court, the appellate court will interfere only if it is manifest that an injustice under the law has been done. Schleuder v. Soltow, 239 Minn. 453, 59 N. W. (2d) 320.

In the case at bar the application in effect required Siemers to state three things to the best of his knowledge: (1) That he was in sound health; (2) that he had no illness or injury since the issuance of the policy; (3) that he had received no medical treatment since the issuance of the policy.

M. S. A. 61.24 reads:

"In any claim upon a policy issued in this state without previous medical examination, or without the knowledge or consent of the insured, or, in case of a minor, without the consent of his parent, guardian, or other person having his legal custody, the statements made in the application as to the age, physical condition, and family history of the insured shall be valid and binding upon the company, unless wilfully false or intentionally misleading. Every policy which contains a reference to the application, either as a part of the policy or as having any bearing thereon, shall have a copy of such application attached thereto or set out therein."

In Schmidt v. Prudential Ins. Co. 190 Minn. 239, 251 N. W. 683, the court in discussing the above statute said that it announced a less harsh rule and prevents the avoidance of nonmedical examination policies on the grounds of material misrepresentations when made as to age, physical condition, or family history unless such misrepresentations are wilfully false or intentionally misleading. Thus, in the case at bar it appears to be implicit in the verdict of the jury that it either found the statements made by Siemers were true or that they were not wilfully false or intentionally misleading. Under the above cited cases we must therefore sustain the verdict if possible under either theory.

The evidence in regard to either of these findings is conflicting. However, we believe the verdict may be sustained on the theory that Mr. Siemers, even if he was not in sound health at the time he reapplied for insurance, did not make any wilfully false or intentionally misleading statements.

A wilfully false and intentionally misleading answer is one which is consciously made with a premeditated design so to falsify the facts as to lead the insurer to act when he otherwise would not. Wilfully

false denotes knowingly concealed. Schmidt v. Prudential Ins. Co. *supra*.

It is the position of the defendant insurance company that Siemers had consulted a Dr. Schmitz in his home town on several occasions between November 8, 1948, and August 1950; that during that period Siemers had been taking phenobarbital three times a day but not continuously; that on some of those visits to the doctor Siemers' blood pressure was taken either at the latter's request or otherwise; that on February 1, 1950, Dr. Schmitz had sent Siemers to see a specialist, Dr. Lowry, in Minneapolis for the purpose of determining whether he was in the age limits to have a sympathectomy (an operation which prevents worrying from causing high blood pressure); that Siemers had suffered from dizzy spells and nausea and complained of feeling tired after bowling; that he had further complained of a pain in the neck, the foot, ankle, hemorrhoids, and backache from lifting; that Siemers had told Dr. Lowry on February 1, 1950, his blood pressure had varied between 180 over 100 and 200 over 120 since approximately November 1948; and that Dr. Lowry had told Siemers he was suffering from hypertension.

From these facts defendant insurance company contends that Siemers' statements on the application were wilfully false and intentionally misleading.

On the other hand, an examination of the record reveals that Siemers first visited Dr. Schmitz on November 8, 1948, because of nervousness; that on later dates, between that time and the time he had applied for a reinstatement of the policy, he had seen the doctor about a cut thumb, a cold, various aches and pains, nervousness, and dizzy spells. The only serious thing apparently being the dizzy spells.

In regard to the dizzy spells Dr. Schmitz advised Siemers to give up smoking. After this advice the latter did quit smoking and the dizzy spells subsided. On January 17, 1950, Dr. Schmitz suggested that Siemers resume normal activity. At the same time the doctor suggested he see a specialist "in the Cities" so that he (Siemers) could become convinced that he was in fact doing fine. In his letter

of reference to Dr. Lowry, Dr. Schmitz stated that Siemers was in excellent physical condition. After examining Siemers, Dr. Lowry replied by letter to Dr. Schmitz and stated that Siemers would need further tests before he (Dr. Lowry) could recommend a sympathectomy operation and that he found Siemers to be in reasonably good physical condition. There is also evidence in the record that Dr. Lowry had told Siemers that his hypertension was "at least, potentially, a serious condition" and that his dizzy spells may have been caused by an obstruction of the ear.

Dr. Schmitz testified that Siemers was a very excitable and apprehensive person but that the only treatment he had given him was a mild sedative. The witness also stated that the purpose of Siemers' visits to him were to have someone with whom to discuss his entire problems and that he probably wished to talk it over and obtain some guidance.

Dr. Schmitz further testified that, until after Siemers had made the application for reinstatement, his high blood pressure was not affecting his general health and during that time he was in excellent physical condition. Dr. Schmitz also stated that he at no time told Siemers that his high blood pressure constituted an illness but to the contrary he had tried to convince Siemers that he was well.

Both Dr. Lowry and Dr. Schmitz stated that they had not seen Siemers for treatment but merely for examination. There is further evidence that he appeared to be in good health. Mr. Rebischke testified that after Siemers had seen Dr. Lowry he felt very good. There is no evidence of his having been hospitalized during the period in question nor is there any evidence that he did not carry on his work as usual during all this time.

The record further shows that he had quit bowling when he had the dizzy spells but resumed bowling again after seeing Dr. Lowry and after Dr. Schmitz told him he could resume normal activity.

There is further evidence that in the same summer that he signed the application for reinstatement Siemers began building a new home on which he did some of the work himself.

The application furnished by the insurance company does not elicit any specific information from the applicant in regard to specific illness or symptoms; instead the insurance company chose to rely on the applicant's own opinion with respect to the condition of his health. In other words, it left it to the best of his knowledge to determine whether or not he had suffered from any illness and whether or not he had received any treatment. We therefore cannot say as a matter of law under the facts and circumstances here that the statements of Siemers were wilfully false or intentionally misleading; rather it seems to us that this constituted a question of fact to be properly decided by the jury.

Defendant also assigns as error that the court erred in instructing the jury that the application for reinstatement required the insured to give the names of the doctors he consulted only for treatment and did not require him to give the names of the doctors he consulted only for examination.

In resolving doubts as to the meaning to be given the terms of an insurance contract, this court will note the purposes for seeking insurance and will avoid an interpretation which would forfeit rights which the insured may have believed he was securing but which because of the failure of the insurer to use clear language are now cast in doubt. Weum v. Mutual Benefit Health & Acc. Assn. 237 Minn. 89, 54 N. W. (2d) 20; Freyberg v. London & Scottish Assur. Corp. 246 Minn. 417, 75 N. W. (2d) 203.

An examination of the application reveals a schedule, the first column of which is headed: "Nature of illness, injury or medical treatment (If none, please write 'none')," the second, third, and fourth columns are headed, "Date," "Duration," and "Is recovery complete?" Clearly these columns relate back to the first column in that, if the applicant feels he has had an illness or medical treatment, he next puts down the date of it, the duration, and whether recovery was complete or not. The fifth column is headed "Names and addresses of all doctors consulted." There is no reason to suppose that the fifth column does not also relate back to the first column in that, if an illness or treatment is listed and a doctor was

consulted with respect to it, the applicant would list the doctor's name opposite such illness or treatment. Nor do we find any place on the application where the applicant would be required to place the names of doctors that the applicant had seen merely for examination. In view of this we feel that the above assignment of error is without merit and that the court properly instructed the jury.

Affirmed.