**Wallace A. HOWARD, Appellant,**

v.

**AID ASSOCIATION FOR LUTHERANS,
Respondent.**

**No. 47804.**

Supreme Court of Minnesota.

Dec. 8, 1978.

Rehearing Denied Dec. 20, 1978.

Engebretson & Galena, St. Paul, for appellant.

Seltz & Tolaas and John F. Ebner, St. Paul, for respondent.

Heard before ROGOSHESKE, KELLY and WAHL, JJ., and considered and decided by the court en banc.

WAHL, Justice.

Plaintiff Wallace Howard, the named beneficiary of a life insurance policy issued by defendant Aid Association for Lutherans on the life of his son, Avery Howard, appeals from the judgment entered in the Dakota County District Court granting defendant's motion for summary judgment. Plaintiff not only seeks review of the judgment, the effect of which precludes recovery on the policy, but also of a prior order of the court directing response to a request for admissions and denying his assertion of medical privilege. We affirm.

The underlying facts are not in serious dispute. On February 3, 1974, Leonard Gangelhoff, defendant's agent and decedent's future father-in-law, met with Avery Howard and assisted him in completing a standard application for life insurance in the amount of $25,000. An attached declaration of insurability required the applicant to respond to a series of questions. His responses, which ultimately served as the basis of this action, are set forth in pertinent part as follows:

"(2)(1) Have you ever been treated for or ever had any known indication of excessive use of alcohol, tobacco or any habit forming drug?

"Answer: No.

"(3) Are you now under observation or taking treatment?

"Answer: No.

"(4) Other than the above, have you within the past 5 years:

"(a) Had any mental or physical disorder not listed above?

"Answer: No.

"(b) Had a checkup, consultation, illness, injury, surgery?

"Answer: No.

"(c) Been a patient in a hospital, clinic, sanatorium or other medical facility?

"Answer: No.

"(d) Had electrocardiogram, x-ray or other diagnostic test?

"Answer: No.

"(e) Been advised to have any diagnostic test, hospitalization or surgery which was not completed?

"Answer: No."

The policy, containing a double indemnity clause, issued thereafter upon defendant's acceptance of the application.

On May 2, 1975, Avery Howard died as the result of a bullet wound to the head inflicted by a co-worker. While the circumstances of his death are not illuminated by the record, they are not material to this action. However, the violent nature of the death apparently prompted defendant to

fully investigate its insured. The investigation disclosed an extensive history of chemical abuse of decedent, including his use of amphetamines, cocaine, and heroin.

Specifically, defendant discovered that Avery had voluntarily entered Hastings State Hospital on January 11, 1972, receiving treatment for multiple drug dependency as an inpatient until April 10, 1972; his recorded prognosis was not favorable. The investigation further revealed sporadic treatment for a period commencing in September 1973 and again in May 1974. Noticeably, decedent's negative responses to defendant's inquiries relating to medical treatment and drug abuse were recorded in the midst of his treatment participation. Further, the record evidences that Avery's dependence upon and use of illicit narcotic drugs was present throughout this period.

1. The first issue raised by plaintiff requires our examination and determination as to whether a misrepresentation of a required disclosure on an insurance application voids the policy without regard to whether the facts misstated ultimately related to the insured's cause of death.

In general, we have held that an insurer has the option to void an insurance contract once it discovers that the insured has wilfully made a false representation which is material and which increases the contractual risk undertaken by the insurer. Minn.St. 61A.11.[1] See, also, *Mack v. Pacific Mut. Life Ins. Co.*, 167 Minn. 53, 208 N.W. 410 (1926); *Shaughnessy v. New York Life Ins. Co.*, 163 Minn. 134, 203 N.W. 600 (1925); *Taylor v. Grand Lodge A. O. U. W.*, 96 Minn. 441, 105 N.W. 408 (1910); *Mattson v. Modern Samaritans*, 91 Minn. 434, 98 N.W. 330 (1904).

A review of authorities analyzing the effect of an insured's misrepresentation upon the insurer's coverage obligation reveals two distinct approaches to materiality. Plaintiff urges our adoption of the minority

position that coverage may only be defeated when the facts misrepresented specifically relate to the cause of death. See, e. g., *Central National Life Ins. Co. v. Peterson*, 23 Ariz.App. 4, 529 P.2d 1213 (1975), and *National Old Line Ins. Co. v. People*, 256 Ark. 137, 506 S.W.2d 128 (1974). He asserts that since there exists no causal connection between a failure to disclose a history of drug abuse and an accidental shooting death, it is consistent with public policy to enforce the terms of the insurance contract.

However, a majority of jurisdictions, including this court, has measured the materiality of a misrepresentation by the extent to which the disclosure influenced the insurer's decision to initially assure the risk of coverage, not by the degree of causal connection between the false statement and the loss protected by the policy. Neither decisional nor statutory authority in this state requires more than that an insured wilfully misstate necessary information or intentionally mislead the insurer into issuing a policy for coverage. Minn.St. 61A.11. In *Shaughnessy v. New York Life Ins. Co.*, supra, we concluded that false responses to insurance application inquiries precluded recovery under the policy. The facts presented indicated that the deceased insured failed to disclose conditions of anemia and headaches, the latter having been diagnosed as related to syphilis. We held that while the insured's death was caused by a brain tumor and had no relationship to the matters concealed, the insured was obliged to truthfully detail her medical condition. A breach of that fundamental obligation affects the very essence of the insurer's decision to offer coverage and was therefore held material.

█ In conclusion, it is our view that the focal examination must be whether an omission or misrepresentation substantially affects or impairs an insurer's ability to

---

1. Minn.St. 61A.11 provides: "In any claim upon a policy issued in this state without previous medical examination, or without the knowledge or consent of the insured, or, in case of a minor, without the consent of his parent, guardian, or other person having his legal custody, the statements made in the application as to the age, physical condition, and family history of the insured shall be valid and binding upon the company, unless *wilfully false or intentionally misleading*." (Emphasis supplied.)

make a reasonable decision to assume the risk of coverage. See, *Empire Life Ins. Co. v. Jones*, 14 Ga.App. 647, 82 S.E. 62 (1914). Particularly, as discussed in *Hofmann v. John Hancock Mutual Life Ins. Co.*, 400 F.Supp. 827, 834 (D.Md.1975), relying upon *Metropolitan Life Ins. v. Samis*, 172 Md. 517, 192 A. 335 (1937):

"  *  *  *  the question should not be whether or not the applicant was afflicted with a particular disease, but whether at the time of application 'facts of which the insured had full knowledge were concealed from the insurer  *  *  *  and were of such probative force as in all reasonable probability, if brought to the knowledge of the company, would have precluded the issuance of the policy.' "

In application of this standard, we conclude that the disclosure of the facts concealed by the decedent would have, with reasonable probability, substantially influenced the insurer's decision to provide coverage and, as such, plaintiff is precluded from recovery under the policy.

Plaintiff then contends that even if the majority rule controls, the issues relating to materiality and wilfulness, as well as the insurer's reliance upon the misstatements, are questions of fact requiring submission to the jury. He suggests that the existence of circumstances where the decedent's revelation of a narcotic's dependence would potentially jeopardize his personal relationship with the daughter of defendant's agent requires that the motive for the falsification be examined within that context, as well as in connection with its effect upon the insurer. We are not persuaded by, nor is there precedential support for, this argument.

■ 2. Finally, in claiming that the trial court erred in denying his assertion of

medical privilege, plaintiff relies primarily upon Minn.St. 595.02(4)[2] to preclude the court's consideration of medical information obtained during the course of the insurer's post mortem investigation. While the privilege has been held available in an action predicated upon an insurance contract, *Roeder v. North American Life Ins. Co.*, 259 Minn. 168, 106 N.W.2d 624 (1960), it is generally acknowledged that a patient may contractually waive that privilege, a practice commonly employed upon application for life insurance. 81 Am.Jur.2d, Witnesses, § 269; 8 Wigmore, Evidence, § 2388.

■ While Minn.St. 595.02(4) has limited the conclusiveness of a written waiver of privilege executed before trial, the limitation applies where the policy of insurance has been in existence for more than two years. The deceased insured died 15 months after the issuance of the policy, well within the two-year period. As such, the written waiver accompanying the insurance application, as well as the medical releases executed by plaintiff after the insured's death, were effective waivers and are binding upon plaintiff. To hold otherwise would render the two-year limitation meaningless.

Affirmed.

---

**2.** Minn.St. 595.02(4) provides: "A licensed physician or surgeon, dentist, or chiropractor shall not, without the consent of his patient, be allowed to disclose any information or any opinion based thereon which he acquired in attending the patient in a professional capacity, and which was necessary to enable him to act in that capacity; after the decease of such patient, in an action to recover insurance benefits, where the insurance has been in existence two years or more, the beneficiaries shall be deemed to be the personal representatives of such deceased person for the purpose of waiving the privilege hereinbefore created, and no oral or written waiver of the privilege hereinbefore created shall have any binding force or effect except that the same be made upon the trial or examination where the evidence is offered or received;"