**Frances BERTHIAUME, individually and as natural guardian of Kevin Berthiaume, Lisa Berthiaume and Patrick Berthiaume, Appellant,**

v.

**MINNESOTA MUTUAL LIFE INSURANCE COMPANY, Respondent.**

**No. CO–86–58.**

Court of Appeals of Minnesota.

June 3, 1986.

Review Denied July 31, 1986.

David E. Essling, St. Paul, for appellant.

James R. Crassweller, St. Paul, for respondent.

Heard, considered and decided by FOLEY, P.J., and SEDGWICK and NIERENGARTEN, JJ.

## OPINION

FOLEY, Judge.

This is an appeal from a judgment granting respondent insurance company's motion for a summary judgment based on *Useldinger v. Old Republic Life Insurance Co.*, 377 N.W.2d 32 (Minn.Ct.App.1985), *pet. for rev. denied*, (Minn. Jan. 17, 1986). The trial court found that Michael Berthiaume, now deceased, knew he had high blood pressure and was attempting to control it through weight reduction, diet, and medicine at the time he applied for mortgage life insurance, thus making his negative response to the question on the application pertaining to high blood pressure willfully false. Appellant Frances Berthiaume, Michael's wife, claims that a genuine issue of material fact exists regarding the decedent's awareness and characterization of his condition. We affirm.

## FACTS

On April 16, 1982, Frances and Michael Berthiaume made written application for mortgage life insurance with respondent Minnesota Mutual Life Insurance Company. The policy sought was to provide $44,308.37 in coverage, the amount of the Berthiaumes' loan balance on the mortgage of their house, for a monthly premium of $12.42.

The insurance application contained two questions pertaining to the health of Michael and Frances. Michael answered the two questions as follows:

1. During the last three years, have you been hospitalized or have you consulted a physician or physicians for any reason? Answer: Yes.

2. Have you ever been treated for or advised that you had * * * high blood pressure * * *? Answer: No.

With respect to the first question, Michael indicated that he had seen a physician or physicians for "yearly school bus and ICC [Interstate Commerce Commission] physicals." No medical examination was required, and Minnesota Mutual never contacted Michael or Frances for additional information.

In October 1982 Michael became ill with a viral infection and was hospitalized. Shortly after his release from the hospital, Michael became ill again, and while getting ready to go to the doctor, Michael fell, striking his head against a coffee table. Frances took Michael to the hospital, where he remained in a coma for several days prior to his death on November 7, 1982. Michael died of a central brainstem herniation as a consequence of a cerebeller infarction.

Frances Berthiaume thereafter submitted a claim for the life insurance proceeds to pay the mortgage on the house. Minnesota Mutual denied coverage on the ground that Michael made material misrepresentations on his application for insurance. Based on a review of Michael's medical records during investigation of the claim, Minnesota Mutual determined that Michael had high blood pressure. Michael's medical records revealed that on January 5, 1982, approximately four months before Michael applied for insurance, Michael's doctor raised the question of high blood pressure and diagnosed hypertension. The doctor told Michael to lose weight and reduce his salt intake.

The medical records further revealed that Michael returned to the doctor on January 19, 1982, at which time his blood pressure was checked and again diagnosed as hypertension. A medication was prescribed to attempt to control Michael's high blood pressure. Hypertension was diagnosed for a third time on February 5, 1982. Michael continued to take the prescribed medicine, and on April 8, 1982, he received a refill.

The deposition testimony of Dr. Beithon, Michael's doctor, confirmed that Michael was advised that he had high blood pressure prior to completing the insurance application. Dr. Beithon testified that during the exam of January 5, 1982 he was concerned about Michael's blood pressure because of the "history of elevated blood pressure readings on the chart previously

and the fact that the nurse had gotten an elevated blood pressure reading." Dr. Beithon told Michael on January 5 that he was concerned about Michael's high blood pressure. Dr. Beithon further testified that a medication was prescribed on January 19, 1982 because Michael had made little progress in losing weight and because his blood pressure was slightly higher than the previous blood pressure check. Dr. Beither testified that he made it clear to Michael that the purpose of the medication was to reduce Michael's high blood pressure.

At the time of his death, Michael was 32 years of age. He was employed as a firefighter-paramedic in St. Paul, and worked part-time as a school bus driver. From 1977 until the time of his death, Michael passed his yearly physicals, which were required in order to drive a school bus.

Minnesota Mutual moved for summary judgment, arguing that as a firefighter-paramedic Michael knew the significance of his high blood pressure and that he failed to disclose his condition on the insurance application. Minnesota Mutual argued that had it known the true facts, it would have denied coverage.

The trial court found that prior to submitting the insurance application, Michael had been advised of his high blood pressure and was undergoing treatment for it. Because the time period between the commencement of treatment for Michael's high blood pressure and the completion of the insurance application was short, the trial court excluded "the possibility that the parties had forgotten the treatment by the time the application was executed or that their concealment of the treatment was accidental." Basing its decision on *Useldinger*, the trial court granted Minnesota Mutual's motion for summary judgment. Frances Berthiaume appeals.

## ISSUE

Was Minnesota Mutual entitled to summary judgment as a matter of law?

## ANALYSIS

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law." Minn.R.Civ.P. 56.03. "A material fact is one of such a nature as will affect the result or outcome of the case depending upon its resolution." *Rathbun v. W.T. Grant Co.*, 300 Minn. 223, 229, 219 N.W.2d 641, 646 (1974).

On appeal, the function of a court reviewing a summary judgment is to determine whether there are any genuine issues of material fact and whether the trial court erred in its application of the law. *Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn.1979).

State law addresses misrepresentations in insurance policies like the one issued by Minnesota Mutual, and the applicable life insurance provision provides as follows:

> In any claim upon a policy *issued in this state without previous medical examination*, or without the knowledge or consent of the insured, or, in case of a minor, without the consent of his parent, guardian, or other person having his legal custody, *the statements made in the application as to* the age, *physical condition*, and family history of the insured *shall be valid and binding upon the company, unless wilfully false or intentionally misleading.*

Minn.Stat. § 61A.11 (1984) (emphasis added). In matters pertaining to the misrepresentation of physical conditions, the burden of proving misrepresentation is on the insurer. *See Price v. Standard Life & Accident Insurance Co.*, 90 Minn. 264, 267–68, 95 N.W. 1118, 1119 (1903); *Useldinger*, 377 N.W.2d at 35 (citing *Price*).

Appellant Frances Berthiaume argues that section 61A.11 should be liberally construed, adding that the standard is subjective because:

> A wilfully false and intentionally misleading answer [on an insurance applica-

tion] is one which is consciously made with a premeditated design so as to falsify the facts as to lead the insurer to act when he otherwise would not. Wilfully false denotes knowingly concealed.

*Siemers v. United Benefit Life Insurance Co.*, 246 Minn. 459, 462–63, 75 N.W.2d 605, 608 (1956). Berthiaume contends that her husband reasonably could have believed that "his alleged hypertension was transitory or insignificant" because his doctors never restricted his activities and regularly certified him for his school bus job. Berthiaume also notes that her husband never expressed any concern about his blood pressure.

Minnesota Mutual counters that an insurer is permitted to void a contract of insurance if the insured made a willfully false representation that is material and increases the contractual risk undertaken by the insurer. According to Minnesota Mutual, the focal point is "whether an omission or misrepresentation substantially affects or impairs an insurer's ability to make a reasonable decision to assume the risk of coverage." *Howard v. Aid Association for Lutherans*, 272 N.W.2d 910, 912–13 (Minn. 1978). Minnesota Mutual characterizes the standard as objective, *see id.* at 913, and argues that summary judgment cannot be avoided "by arguing that the subjective intent of the decedent is always a question of fact to be determined by a jury." Thus, Minnesota Mutual concludes that Berthiaume's argument that her husband's failure to disclose his high blood pressure was unintentional or inadvertent is irrelevant because the facts indicate that Michael was advised of and undergoing treatment for his high blood pressure just shortly before he completed the mortgage life insurance application.

This court has recently decided a case with similar facts. In *Useldinger*, William Useldinger made written application for life insurance on April 15, 1983. *Useldinger*, 377 N.W.2d at 33. The application contained a number of questions pertaining to high blood pressure, enlarged glands, and serious illnesses or disorders. *Id.* Usel-

dinger responded negatively to all questions asking whether he had any of these problems. *Id.* Prior to the issuance of the insurance certificate, he did not undergo a medical examination. *Id.* Approximately one month after completing the application, Useldinger died, and the cause of his death was determined to be liver and kidney failure due to cirrhosis of the liver resulting from chronic alcoholism. *Id.*

The decedent's estate then submitted a claim. *Id.* The insurance company denied benefits, however, after its investigation revealed that the decedent had been diagnosed as having high blood pressure and cirrhosis of the liver in October 1981. *Id.* at 33–34. The trial court thereafter granted the insurance company's motion for summary judgment. *Id.* at 35.

This court affirmed the trial court, concluding that summary judgment was appropriate because the decedent failed to disclose serious health problems initially diagnosed 18 months prior to the application of insurance. *Id.* at 37. We noted that the progressive nature of cirrhosis of the liver prevented it from being classified as "trivial or temporary." *Id.* at 36. More importantly, we noted that the record disclosed a number of discussions between the decedent and his doctor concerning treatment for high blood pressure and thus concluded that the "decedent knew he had high blood pressure even if he did not subjectively appreciate the seriousness of the condition." *Id.* at 36–37. For these reasons, we affirmed the trial court's entry of summary judgment for the insurance company. *Id.* at 37. We find *Useldinger* to be controlling in this case.

 Section 61A.11 allows an insurer to void an insurance policy issued without a prior medical examination if the insured willfully misstates necessary information or intentionally misleads the insurance company. *See* Minn.Stat. § 61A.11. The materiality of a misrepresentation is measured by the "extent to which the disclosure influenced the insurer's decision to initially assure the risk of coverage, not by the degree of causal connection between

the false statement and the loss protected by the policy." *Howard,* 272 N.W.2d 912. Here it is clear that Michael failed to disclose his high blood pressure, a condition he knew of and for which he had undergone treatment. As in *Useldinger,* we are convinced that this fact, had it been disclosed, would have influenced Minnesota Mutual's decision to provide coverage. *See Useldinger,* 377 N.W.2d at 36. Thus, we conclude that the trial court did not err in granting Minnesota Mutual's motion for summary judgment.

## DECISION

Summary judgment for the insurance company was proper because the decedent failed to disclose a previously diagnosed problem with high blood pressure on the application for insurance.

Affirmed.

NIERENGARTEN, J., dissents.

NIERENGARTEN, Judge, dissenting.

I respectfully dissent. The majority opinion notes with approval Minnesota Mutual's argument that the standard used to determine whether the insured willfully misrepresented his condition to the insurer as objective and that subjective beliefs by the insured of his condition are irrelevant. To the contrary. I submit the standard as interpreted by the Minnesota Supreme Court necessarily involves examination of the insured's subjective intent.

In *Howard v. Aid Association for Lutherans,* 272 N.W.2d 910 (Minn.1978), the supreme court cited with approval the standard used to determine whether an insured has willfully misrepresented his physical condition on a life insurance application. Crucial to the standard is the requirement that an insured have full knowledge of his condition at the time of the application. The *Howard* court stated:

"[T]he question should not be whether or not the applicant was afflicted with a particular disease, *but whether at the time of application 'facts of which the insured had full knowledge were con-*

*cealed from the insurer * * * and were of such probative force as in all reasonable probability, if brought to the knowledge of the company, would have precluded the issuance of the policy.'* "

*Howard,* 272 N.W.2d at 913 (quoting *Hofmann v. John Hancock Mutual Life Insurance Co.,* 400 F.Supp. 827, 834 (D.Md. 1975) (emphasis supplied).

To determine whether the insured had full knowledge of his condition at the time of the application requires examination not only of whether he knew of his condition but also whether he fully understood the significance of his condition. Here the decedent insured gave a negative response in his application for life insurance to the question of whether he had been told he had high blood pressure. The information possessed by Berthiaume at the time he completed the application creates a genuine fact issue as to whether his denial intentionally concealed facts which, if known to the insurer, would have precluded the issuance of the policy.

A material fact issue arises concerning whether Berthiaume had full knowledge of the potential consequences of his high blood pressure. The majority notes in its opinion that Berthiaume was diagnosed on three separate occasions as having a blood pressure problem. Although diagnosed as having high blood pressure, Berthiaume's activities were never restricted nor did his problem result in the loss of certification for his school bus driver's position. He could well have concluded given his manner of treatment that his condition was not serious in nature.

I would reverse the trial court's grant of summary judgment in favor of the insured. A factual issue exists as to whether the insured willfully misrepresented his physical condition to the insurer when he completed his application.