43 F.3d 382
 18 Employee Benefits Cas. 2866
 R. Wendell ELLIS, Appellee,
v.
The GREAT-WEST LIFE ASSURANCE COMPANY, a Canadian
corporation, Appellant.
R. Wendell ELLIS, Appellant,
v.
The GREAT-WEST LIFE ASSURANCE COMPANY, a Canadian
corporation, Appellee.
 Nos. 93-1973, 93-1975.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Dec. 16, 1993.
Decided Dec. 23, 1994.
 
 1
 Richard A. Koehler, Minneapolis, MN, argued, for appellant.
 
 
 2
 Jeffrey H. Olson, Eden Prairie, MN, argued, for appellee.
 
 
 3
 Before JOHN R. GIBSON, Senior Circuit Judge,* MORRIS SHEPPARD ARNOLD, Circuit Judge, and BARTLETT, District Judge.**
 
 
 4
 BARTLETT, District Judge.
 
 
 5
 The Great-West Life Assurance Company (Great-West) appeals from the district court's judgment in the amount of $60,000 in favor of R. Wendell Ellis (Ellis) as beneficiary of a $62,500 life insurance policy on the life of his wife, Robinette Ellis. We reverse.
 
 
 6
 I. Issues on Appeal.
 
 
 7
 Appellant Great-West raises three issues on appeal. First Great-West argues that the district court erred by applying an incorrect legal standard in concluding that Robinette Ellis' prior health history did not need to be disclosed on the application for life insurance. Second, Great-West argues that the district court erred by recognizing the legal theory of estoppel to modify the express, written terms of an ERISA benefit plan. Third, Great-West argues that in the event this court recognizes the legal theory of estoppel to allow informal modification of the written terms of an ERISA benefit plan, the district court incorrectly applied the theory.
 
 
 8
 II. Facts.
 
 
 9
 The following facts were found by the district court.
 
 
 10
 Among Ellis' responsibilities to his employer, Imperial Plastics Inc., was coordination of the company's employee benefits plan. Randy Otis, an independent insurance broker in Fargo, North Dakota, negotiated with Great-West for group health and life benefits for Imperial's employees. Barton Woodworth was the authorized agent of Great-West who handled the Imperial plan. On September 25, 1990, the president of Imperial signed the master application for the benefit plan. The plan was effective as September 1, 1990.
 
 
 11
 Prior to September 18, 1990, Ellis and Woodworth met to discuss details of the health and life insurance plan. Ellis wished to provide "Add-on Group Term Life Insurance" (Add-on) for both him and his wife, as permitted by the plan. Ellis filled out and signed an "Individual Application for Optional Group Term Life Insurance" dated September 1, 1990. "Ellis indicated that the answers to the questions on the application were the same for both him and Mrs. Ellis. Woodworth told Ellis that he should fill out the answers to the questions for himself, and not to worry about separate answers for the spouse." Ellis v. The Great-West Life Assurance Co., No. CV 3-91-529, slip op. at 3 (D.Minn. Feb. 25, 1993). The following questions were contained on the application with boxes to mark either "yes" or "no" and with a space to provide certain information if "yes" were marked:
 
 
 12
 2. Have you smoked cigarettes in the past 12 months?
 
 
 13
 3. Have you ever had any of the following?
 
 
 14
 A. disorder of the heart or arteries, cancer, epilepsy, emphysema or mental disease or nervous disorder?
 
 
 15
 B. high blood pressure?
 
 
 16
 C. diabetes?
 
 
 17
 4. Have you been diagnosed as having or been treated for any disease of the immune system by a member of the medical profession?
 
 
 18
 5. Have you received treatment or joined an organization in the past 5 years because of alcoholism or drug habit?
 
 
 19
 6. Are you currently engaged in any hazardous sport such as skydiving, hang gliding, automobile or motorcycle racing?
 
 
 20
 7. Have you been in a hospital or received treatment in the past 5 years because of an injury or a disease not mentioned above?
 
 
 21
 8. Do you have any reason to believe that you are not in good health?
 
 
 22
 Ellis marked "no" by each of these questions.
 
 
 23
 On September 18, 1990, Woodworth told Ellis that he had filled out the wrong application for the Add-on life insurance for his wife. Woodworth said that a new application needed to be filled out, but that it would be dated the same date as the original application.
 
 
 24
 On September 25, 1990, Ellis' wife entered the hospital. While in the hospital, Robinette Ellis signed an application for Add-on life insurance containing the same answers to the health questions as had been given by her husband on the original application. Robinette Ellis signed on the line that was designated for the signature of the employee.
 
 
 25
 On October 2, 1990, Robinette Ellis died from myocardial infarction and coronary artery disease.
 
 
 26
 On or before October 8, 1990, the home office of Great-West discovered that Ellis had not completed the proper applications for Add-on life insurance because the applications did not have separate spaces for information regarding an employee's spouse. The correct application had two columns for answering questions 1 through 8 and two signature lines. On October 29, Great-West informed Imperial that Ellis and his spouse would have to fill out the correct two-column application. Ellis and Imperial filled out the new application by transferring the information from the previous applications. The signature lines on the new application referred to the previous applications that were attached. On November 6, 1990, Great-West approved the life insurance coverage for Ellis and his wife. On November 13, 1990, Woodworth informed Imperial that Great-West had underwritten the Add-on life insurance based on the original application submitted.
 
 
 27
 Ellis presented a claim for benefits on November 15, 1990.
 
 
 28
 Great-West denied benefits, contending that the insurance contract with Ellis was void because of misrepresentations made on his wife's application. In 1974, Robinette Ellis was diagnosed with diabetes mellitus, and received treatment from 1981 to 1987. At various times from 1981 to 1990, she was treated for hypertension and high blood pressure. She had also received treatment for phlebitis, for a duodenal ulcer and other obesity-related problems. She had been hospitalized as late as 1987 at the Mayo Clinic. However, none of these medical conditions significantly impaired her activities. Her doctor had not expressed any concern about her health.
 
 
 29
 III. The District Court's Opinion.
 
 
 30
 The district court held that Imperial's basic life insurance plan, including the optional Add-on life insurance, was an "employee welfare benefit plan" within the meaning of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. Sec. 1002(1)(A). Id. at 11. The "Summary Plan Description" (SPD) controls the interpretation of Imperial's life insurance plan if its terms are unambiguous. The district court found that the application for Add-on life insurance (referenced in the SPD) was ambiguous with respect to the need for the spouse to fill out and sign a separate application because there was no separate place designated for the spouse to answer questions or to sign. Woodworth's directions to Ellis about filling in the original application for both himself and his wife are controlling as interpretations of an ambiguous term. Id. at 13.
 
 
 31
 Based on the representations by Woodworth,
 
 
 32
 the first application [Ellis] filled out was the one which he intended to commence coverage for both himself and Mrs. Ellis and Woodworth was aware of this intention. In fact, Great-west specifically related that it would base its approval or rejection of coverage on the single-columns form filled out by employees.
 
 
 33
 Id. at 14.
 
 
 34
 The district court concluded that absent an intentional misrepresentation on the application, Great-West was obligated to provide coverage for 75 days or until Great-West accepted or rejected the application. "Ellis did not willfully falsify or intentionally misrepresent the condition of Mrs. Ellis' health on the first Add-on application he completed sometime prior to September 18, 1990." Id. at 9.
 
 
 35
 The district court applied Minn.Stat. Sec. 61A.11 which provides:
 
 
 36
 In any claim upon a policy issued in this state without previous medical examination ... the statements made in the application as to the age, physical condition, and family history of the insured shall be valid and binding upon the company, unless willfully false or intentionally misleading.
 
 The district court stated:
 
 37
 [i]n Minnesota, the standard used to determine whether an insured has willfully misrepresented his physical condition requires that the insured have full knowledge of the [sic] his condition at the time of the application. See Howard v. Aid Ass'n for Lutherans, 272 N.W.2d 910, 913 (Minn.1978) ('[T]he question should not be whether or not the applicant was afflicted with the particular disease, but whether at the time of the application facts of which the insured had full knowledge were concealed from the insurer....'). A willfully false and intentionally misleading statement has also been defined as 'one which is consciously made with a premeditated design so to falsify the facts as to lead the insurer to act when he otherwise would not.' Siemers v. United Benefit Life Ins. Co., 75 N.W.2d 605 (Minn.1956).
 
 
 38
 Ellis v. Great-West Life Assurance Co., No. CV 3-91-529, slip op. at 14-15. Thus, the district court concluded that a subjective standard governs whether a statement is willfully false or intentionally misleading.
 
 
 39
 The district court concluded "that neither Ellis nor Mrs. Ellis filled out the Add-on applications with any sort of 'premeditated design' to obtain life insurance knowing that Great-West would likely not insure Mrs. Ellis if the answers on the application had been any different." Id. at 15.
 
 
 40
 [A]s the medical records reveal her health conditions had either ceased to be of major concern to her or to her treating physician, or were under control through treatment. It is also clear from the testimony that Mrs. Ellis was not restricted in her daily activities by any health problems.
 
 
 41
 The court was not presented with any evidence that Ellis, when completing the first Add-on life insurance application willfully falsified or intentionally misled Great-west with respect to his wife's health.
 
 
 42
 Id. at 15-16.
 
 
 43
 The district court acknowledged that when Robinette Ellis signed the application in the hospital, the negative response to the question about having been in the hospital in the past five years was misleading. However, Great-West had agreed to consider the information in the first application and at that time, "Ellis had no knowledge of Mrs. Ellis' impending heart condition." Id. at 16 n. 5.
 
 
 44
 The district court concluded that the statements contained in the application were not willfully false or intentionally misleading. At the time Ellis completed the first application, he did not willfully falsify or intentionally mislead Great West by his answers to the questions on the application.
 
 
 45
 [Ellis] was aware of his wife's medical history, but reasonably believed that all of her medical conditions were either temporary in nature or under control, and therefore did not present serious health threats which would be of relevance on the insurance application or which would require an affirmative response to the questions contained therein.
 
 
 46
 Id. at 5.
 
 
 47
 Because the statements were not willfully false or intentionally misleading, the district court held that Great-West could not void the insurance policy. The district court awarded plaintiff $60,000.
 
 
 48
 IV. Standard of Review.
 
 
 49
 In a civil bench trial the "trial judge's findings of fact will not be set aside unless clearly erroneous. Mixed questions of law and fact that require the consideration of legal concepts and involve the exercise of judgment about the values underlying legal principles are reviewable de novo." Sargent v. C.I.R., 929 F.2d 1252 (8th Cir.1991) (citations omitted).
 
 
 50
 V. Discussion.
 
 
 51
 The district court correctly held that Minn.Stat. Sec. 61A.11 applied to this case. Thus, if the statements made by Ellis about his wife's medical condition were willfully false or intentionally misleading, as those terms are used in Minn.Stat. Sec. 61A.11, the insurance policy issued on the basis of those statements may be voided.
 
 
 52
 In defining the term "willfully false or intentionally misleading," the district court relied on Siemers v. United Benefit Life Ins. Co., 75 N.W.2d 605, 608 (Minn.1956), where the court stated:
 
 
 53
 A willfully false and intentionally misleading answer is one which is consciously made with a premeditated design so as to falsify the facts so as to lead the insurer to act when he otherwise would not. Wilfully false denotes knowingly concealed.
 
 
 54
 This subjective standard was used by the Minnesota Supreme Court in Siemers in deciding not to set aside a jury verdict in favor of the insured because:
 
 
 55
 The application furnished by the insurance company does not elicit any specific information from the applicant in regard to specific illness or symptoms; instead, the insurance company chose to rely on the applicant's own opinion with respect to the condition of his health. In other words, it left it to the best of his knowledge to determine whether or not he had suffered from any illness and whether or not he had received any treatment.
 
 
 56
 Id. at 609.
 
 
 57
 In later Minnesota appellate decisions where the questions on the insurance application have been more specific than in Siemers, Minnesota courts have not required a "premeditated design" to falsify facts. See Howard v. Aid Ass'n for Lutherans, 272 N.W.2d 910 (Minn.1978); Useldinger v. Old Republic Life Ins. Co., 377 N.W.2d 32 (Minn.Ct.App.1985); Berthiaume v. Minnesota Mutual Life Ins. Co., 388 N.W.2d 15 (Minn.Ct.App.1986); St. Cloud National Bank & Trust Co. v. Woodmen of the World Life Ins. Society, 451 N.W.2d 75 (Minn.Ct.App.1990).
 
 
 58
 In Howard v. Aid Association for Lutherans, 272 N.W.2d 910 (Minn.1978), the court was required to decide whether "a misrepresentation of a required disclosure on an insurance application voids the policy without regard to whether the facts ultimately related to the insured's cause of death."
 
 
 59
 In ruling that there had been no causal relation between the misrepresented facts and the cause of death, the court in Howard stated that "[n]either decisional nor statutory authority in this state requires more than that an insured willfully misstate necessary information or intentionally mislead the insurer into issuing a policy for coverage." Id. at 912 (emphasis supplied). The Minnesota Supreme Court then quoted with approval the following from Hofmann v. John Hancock Mutual Life Ins. Co., 400 F.Supp. 827, 834 (D.Md.1975):
 
 
 60
 [T]he question should not be whether or not the applicant was afflicted with a particular disease, but whether at the time of application 'facts of which the insured had full knowledge were concealed from the insurer ... and were of such probative force as in all reasonable probability, if brought to the knowledge of the company, would have precluded the issuance of the policy.' (citation omitted).
 
 
 61
 The Minnesota Supreme Court rejected the beneficiary's argument that, under the objective standard, issues such as materiality, willfulness and reliance were jury questions. "We are not persuaded by, nor is there precedential support for, this argument." Howard, 272 N.W.2d at 913. The court affirmed summary judgment for the insurance company. Id.
 
 
 62
 In Useldinger v. Old Republic Life Insurance Co., 377 N.W.2d 32 (Minn.Ct.App.1985), the insurance company's application asked for knowledge of high blood pressure. The court affirmed summary judgment in favor of the insurance company because the "decedent knew he had high blood pressure even if he did not subjectively appreciate the seriousness of the condition." Id. at 36-37.
 
 
 63
 In Berthiaume v. Minnesota Mutual Life Ins. Co., 388 N.W.2d 15 (Minn.Ct.App.1986), the insurance company denied coverage on the ground that the decedent made material misrepresentations on the application for insurance. The trial court granted summary judgment after finding that the decedent had been advised of his high blood pressure and that there was no possibility he could have forgotten about the diagnosis when responding to the questions on the application.
 
 
 64
 The appellant/decedent's wife argued for a subjective standard for determining whether there had been a willfully false and intentionally misleading answer on an insurance application citing the same language in Siemers relied upon by the district court in the instant case. Id. at 17-18. The Court of Appeals said that Useldinger controlled.
 
 
 65
 Here it is clear that [decedent] failed to disclose his high blood pressure, a condition he knew of and for which he had undergone treatment. As in Useldinger, we are convinced that this fact, had it been disclosed, would have influenced Minnesota Mutual's decision to provide coverage.
 
 
 66
 Id. at 19.
 
 
 67
 In St. Cloud National Bank and Trust Co. v. Woodmen of the World Life Ins. Society, 451 N.W.2d 75 (Minn.Ct.App.1990), the court again relied on the objective standard set forth in Howard for determining whether an insured's statements are willfully false and intentionally misleading, i.e., facts known to the insured are conceded from the insurer and were of such probative force that if known would have "in all reasonable probability" precluded issuance of the policy. However, because there was a factual dispute whether the insured knew that he had the condition inquired about on the application, judgment as a matter of law was not appropriate. Id.
 
 
 68
 Therefore, we believe that although a statement by an insured would be wilfully false or intentionally misleading if an insured acted with an intent to deceive the insurer, the phrase "wilfully false or intentionally misleading" as used in Minn.Stat. 61A.11 does not require that there be an intent to deceive. All that is required is that the insured have full knowledge of the facts that are concealed and that the concealed facts probably would have precluded issuance of the policy if known to the insurance company.
 
 
 69
 In the present case, the district court found that "[i]n 1974, Mrs. Ellis was first diagnosed with diabetes mellitus, and received treatment at various levels of intensity from 1981 to 1987. At various times from 1981 to 1990, Mrs. Ellis experienced some hypertension and high blood pressure, and received treatment for phlebitis an duodenal ulcer." Ellis v. The Great-West Life Assurance Co., No. CV 3-91-529, slip op. at 4 (D.Minn. Feb. 25, 1993). The district court also found that Mr. Ellis was aware of his wife's medical history. Id. at 5. When Ellis answered the health questions on the application for his wife, he had full knowledge of his wife's medical history, yet he did not reveal it in response to specific questions on the application.
 
 
 70
 Although the district court found that Ellis "reasonably believed that all of her medical conditions were either temporary in nature or under control and therefore did not present serious health threats which would be of relevance on the insurance application or which would require an affirmative response to the questions contained therein," id., the district court is not permitted to rewrite the questions contained on the application. The question asked "have you ever had" the various conditions; the question did not ask the applicant to respond in the affirmative only if the applicant felt the conditions presented a serious health threat. Under Howard, when questions are worded in this manner, the facts must be revealed. The insurance company, not the insured, assesses the significance of the facts.
 
 
 71
 Because the questions in the insurance application regarded serious health conditions, we are convinced, as were the Minnesota courts in Howard, Useldinger, and Berthiaume, that had the conditions been disclosed, the information would have influenced Great-West's decision to provide coverage. Therefore, the statements of Ellis were wilfully false and intentionally misleading as those terms are used in Minn.Stat. 61A.11. Thus, Great-West could void the life insurance contract.
 
 
 72
 Because we find in Great-West's favor, we need not reach the issues raised by appellant regarding estoppel.
 
 
 73
 VI. Conclusion.
 
 
 74
 Accordingly, the decision of the district court is reversed with judgment to be entered in Great-West's favor. Because Ellis is no longer the prevailing party, Ellis' cross-appeal for attorney's fees is dismissed.
 
 
 75
 Accordingly, we reverse the judgment of the district court.
 
 
 
 *
 The HONORABLE JOHN R. GIBSON was Circuit Judge of the United States Court of Appeals for the Eighth Circuit at the time this case was submitted, and took senior status on January 1, 1994, before the opinion was filed
 
 
 **
 The HONORABLE D. BROOK BARTLETT, United States District Judge for the Western District of Missouri, sitting by designation