MATHIAS HAFNER AND ANOTHER v. PRUDENTIAL
INSURANCE COMPANY OF AMERICA.[1]

March 24, 1933.

No. 29,306.

Oppenheimer, Dickson, Hodgson, Brown & Donnelly and George
W. Jansen, for appellant.

A. I. Levin and Keller, Broady & Chapin, for respondents.

[1]Reported in 247 N. W. 576.

LORING, JUSTICE.

In a suit by the beneficiaries on a policy of life insurance the plaintiffs had a verdict. The defendant moved for judgment for the plaintiffs in the sum of $17.46 notwithstanding the verdict or for a new trial and has appealed from the order denying that motion.

Eugenia H. Hafner was the foster daughter of the plaintiffs. The Hafners had carried a number of small life insurance policies upon various members of their family in the defendant company, and amongst others there were several policies aggregating approximately $1,000 upon the life of Eugenia. She became 16 years of age on the 14th day of August, 1930, and on January 22, 1931, Schmitz, an agent of the defendant, who was evidently aware that Eugenia had then attained an age which would make her eligible for a larger and perhaps more desirable policy, took her application for the policy here sued upon. It was apparently a standard form of life insurance policy with an annual premium of $17.46. On account of the small size of the policy no medical examination was required by the defendant, but it was issued upon the medical history made out by the agent and signed by Eugenia. She died on the second day of June, 1931, of chronic Bright's disease, from which she had been suffering for some years. In 1926 she had been hospitalized for that trouble, and the week before she made the application for the insurance here involved she had been with her foster father to the Mayo clinic at Rochester and had been there examined. Both she and her father were well aware that she was afflicted with kidney trouble, but there is no evidence in the record that they were aware that the disease was likely to be fatal.

The principal controversy here arises over what took place at the time Schmitz took the application for the insurance and the legal effect of Eugenia's application under the facts as most favorably viewed from respondents' standpoint. In the written application signed by Eugenia it was represented that she had no physical or mental defect or infirmity; that her weight had not changed in the previous year; that she had had no serious illness and no medical or surgical treatment in a hospital for any such illness;

that she was at the time of making the application in good health and had not been attended by a physician during the three years previous to the application; and, specifically, that she had had no disease of the kidneys. These representations were of course false and material to the risk. The defendant tendered back the annual premium which had been paid and upon the trial moved for a directed verdict in favor of the plaintiffs in the amount of such premium. The motion was denied.

◼ Schmitz testified that he either read or stated the contents of the questions in the application to Eugenia, that she responded in the negative, and that he so recorded her answers. He said that these questions were asked of her in the presence of her foster father, Mathias Hafner; but Hafner says that in his presence no questions were asked of Eugenia but that Schmitz obtained the answers by consulting a note book which he had with him and which presumably contained information obtained from policies previously taken out. Hafner was waiting on customers in his store and was momentarily away from Schmitz and Eugenia while so doing. It was quite possible, according to his testimony, that the questions might have been asked in his absence, and consequently the defendant claims that Schmitz' testimony must be taken as conclusive upon the theory that it is undisputed and unimpeached. We do not so regard the situation. Schmitz was positive that the questions were asked and the answers given in the presence of Hafner, who stood close by during the alleged interrogation. Hafner positively denies this, and we think that Schmitz' testimony was so far contradicted by that of Hafner that the jury might be justified in rejecting his story of the transaction and that it became a question of fact whether the questions were actually asked and answered or whether Schmitz made out the application and filled in the answers without making the inquiry of Eugenia and had her sign the application without reading it to her or otherwise informing her of its contents. That being the case, we must treat the record here upon respondents' theory that Eugenia signed a document the contents of which were unknown to her.

484

■ Upon this view of the evidence the defendant relies upon Shaughnessy v. New York L. Ins. Co. 163 Minn. 134, 203 N. W. 600, which was an action upon a life insurance policy where a medical examination was required and where, upon the plaintiff-respondent's theory of the case, the examining physician filled in the answers to the questions contained in the medical report without inquiry of the insured, who signed the application without reading it. This court there held that the insured had the opportunity and ability to read the application and that under such circumstances the law would not permit a showing that she did not know what the application contained. The defendant was there given a judgment. The Shaughnessy case stands unreversed in this court and as applied to policies of the character there involved is no doubt good law. That question is not before us. The policy in the case at bar is one issued without previous medical examination. G. S. 1923 (1 Mason, 1927) § 3396, provides in regard to policies so issued that:

"The statements made in the application as to the age, physical condition, and family history of the insured shall be valid and binding upon the company, unless wilfully false or intentionally misleading."

It is claimed by the defendant that § 3396 does not apply to ordinary standard life insurance policies but only to so-called industrial insurance. It cites McAlpine v. Fidelity & Cas. Co. 134 Minn. 192, 158 N. W. 967. It was there held that the section which now appears as G. S. 1923 (1 Mason, 1927) § 3370, applied to a policy of accident insurance and that the provision which now appears as § 3396 was passed with a view to controlling industrial insurance policies; but it was also stated in the opinion that there may be other kinds of life insurance to which § 3396 applies. We think that it clearly applies to the policy involved in the case at bar and that Eugenia's misrepresentations must have been wilfully false or intentionally misleading in order to avoid the policy. The case comes within the plain terms of the statute, and there is no rule of construction which justifies its nonapplication. We therefore hold that § 3396 rather than § 3370 controls the situation be-

fore us; and, when the insurance company makes out and places before an applicant for insurance a document which it has prepared and in which it has placed misrepresentations in regard to the insured's physical condition or medical history and obtained the applicant's signature without disclosing the contents of the questionnaire, we see no wilfully false or intentionally misleading conduct on the part of the insured. Therefore, within the terms of the section cited, the company is bound upon the policy upon which this suit was brought.

The defendant took two exceptions to the court's charge. The first paragraph complained of charged that if either Hafner or his daughter supplied the answers in the medical history "the answers, if given, to Schmitz and *correctly recorded by him in the application* were given with the intent to deceive and defraud" and, if made, defeated the policy. The part of the charge complained of is that italicized. We see no prejudice to the defendant in this language. Obviously the court was merely endeavoring to characterize the answers and to tell the jury that if the recorded answers were the answers given by the applicant they avoided the policy.

The second exception to the charge is disposed of by our discussion of the law as applicable to the merits of the case.

The order of the trial court is affirmed.

STONE, JUSTICE (concurring specially).

This decision, with that in Enge v. John Hancock Mut. L. Ins. Co. 183 Minn. 117, 236 N. W. 207, establishes a rule of decision law which compels life insurance companies to insure the lives of some persons afflicted with disease bound to end fatally and soon. The result is plainly against public policy and abhorrent to the whole theory of life insurance and the practice of all reputable life underwriters—a theory of sanity and a practice of safety courts should sustain rather than thwart. Here we are imposing an unintended, anomalous, and dangerous liability in spite of every precaution that honest, lawabiding insurers can take. It is imposed against, and in spite of, explicit condition precedent to liability, by reason solely of what interested persons testify was or was not

done by the soliciting agent, who had no power to waive any condition of the policy. The process is so simple and so easy and its reward so generous that the result is a premium for perjury, of which our law already offers too many in its various facilities for the success of synthetic causes of action and defenses.

All that notwithstanding, I concur in the result in deference to the views of my associates and upon the authority of the decision of the Enge case, questionable as its reasoning seems to me, for reasons stated at the time.