# KATHARINE SCHMIDT v. PRUDENTIAL INSURANCE COMPANY OF AMERICA.[1]

December 8, 1933.

No. 29,501.

[1]Reported in 251 N. W. 683.

240

*Oppenheimer, Dickson, Hodgson, Brown & Donnelly* and *George W. Jansen,* for appellant.

*Alfred R. Sundberg,* for respondent.

*DEVANEY, Chief Justice.*

Plaintiff as special administratrix of the estate of Theodore A. Schmidt, her husband, brings this suit against the defendant insurance company to recover $500 under a certain nonmedical examination insurance policy issued on his life July 6, 1931. The jury found for plaintiff, and from an order denying defendant's motion for judgment for plaintiff for $9.30, the amount of premiums actually paid by the insured, notwithstanding the verdict, or for a new trial, defendant appeals.

The questions presented for determination by this court are as follows:

(1) What effect has 1 Mason Minn. St. 1927, § 3396, on the avoidance of nonmedical examination life insurance policies?

(2) Were the statements made by insured in his application for insurance wilfully false and intentionally misleading as a matter of law?

(3) Are the provisions found in the application for insurance and in the policy itself, requiring the insured to be in sound health on the date of the application and on the date of the issuance of the policy, to be construed as conditions precedent to the taking effect of the policy?

■ The insured, Theodore A. Schmidt, for many years had been, and was at the time of his death, in the employ of the Northern Pacific railroad. In his application for insurance he made certain answers as to his physical condition. In these he stated that the present condition of his health was good, that he never was seriously sick, that no physical or mental defect existed, and that he never suffered from heart disease. There was no medical examination. In fact the insured was not in good health at the time of signing the application nor at the time of the issuance of the policy. He had been treated some months previous to that date for what

he called "shortness of breath" at the Northern Pacific Beneficial Association Hospital. This treatment was free, the insured being a member of the association by virtue of his employment. This "shortness of breath" was in reality caused by high blood pressure.

1 Mason Minn. St. 1927, § 3396, provides:

"In any claim upon a policy issued in this state without previous medical examination, * * * the statements made in the application as to the age, physical condition, and family history of the insured shall be valid and binding upon the company, unless wilfully false or intentionally misleading."

In Hafner v. Prudential Ins. Co. 188 Minn. 481, 247 N. W. 576, this section of the statute was held to apply to a policy such as we here are considering. In that case the application of 1 Mason Minn. St. 1927, § 3370, was discussed at length and was held not to apply to policies of the nonmedical examination type. Under § 3370 the court has announced a rule which renders the question of the applicant's intent of no consequence if he made material misrepresentations which increased the risk of loss. The manifest object of § 3396 was to make the question of intent all-important. As to the insured, therefore, § 3396 announces a less harsh rule and prevents the avoidance of nonmedical examination policies on the ground of material misrepresentations where made as to "age, physical condition, and family history" unless such are wilfully false or intentionally misleading. In this connection, see Elness v. Prudential Ins. Co. 190 Minn. 169, 251 N. W. 183.

■ Defendant argues that, since Schmidt's attendance at the hospital and the prescription there received for his "shortness of breath" manifestly were known to him and yet were not disclosed in his answers given in the application, the statements in the application were wilfully false and intentionally misleading as a matter of law. There is here no testimony from anyone that the insured knew that he was suffering from high blood pressure or heart disease or that he knew the nature of the medicine prescribed. He had been employed at the Northern Pacific shops for 19 years and, except for slack periods, had worked continually. He appeared to be in

good health. He never complained of being in ill health except for what he termed "shortness of breath," and advised no member of his family that he was suffering from high blood pressure. The Sunday before his death he attended a family picnic and took part in a baseball game, which argues rather persuasively that neither the insured nor the members of his family knew that he was a sufferer from any heart ailment. The jury might well conclude that the insured did not know that he was suffering from high blood pressure and therefore that he could not wilfully have misrepresented the fact relating thereto. Under 1 Mason Minn. St. 1927, § 3396, a wilfully false and intentionally misleading answer is one which is consciously made with a premeditated design so to falsify the facts as to lead the insurer to act where he otherwise would not. Wilfully false denotes knowingly concealed. If the jury found, as they might well do under the evidence, that decedent did not know of his ailment when filling out his application, obviously there was no wilfully false or intentionally misleading statement within the above definition.

Another reason for our conclusion that the answers were not wilfully false or intentionally misleading as a matter of law under the above definition is this: The jury might have found from the testimony that the circumstances under which the application for insurance was taken were such that decedent did not fully understand the questions when asked. Two agents of the defendant were present and had their separate parts in securing the application. One agent, Kochsiek, relates it thus:

"Well, I might tell how—tell of our conversation if it isn't out of order, how we go about this. Went in there and had a nice chat with the family, and, as we do, I usually do most of the talking, the agent calls there right along, he kind of sits in the background and he writes the applications. Not an unusual procedure, we do that right along. * * * And then I suggested to Mr. Schmidt that he being the only member of the family that wasn't insured in the Prudential, it would be nice for him to come in. And we talked about it for a bit, and finally he seemed to be leaning towards the Pruden-

tial, and I proceeded to ask him the questions on the application, and Mr. Tracy [the other agent] took the cue and wrote it."

The insured did not seek insurance, but, as related, he had been solicited to apply for a policy and to join with some 20 odd members of his family who held policies in defendant company. The testimony as to the somewhat confused manner in which the answers as to health and history were elicited from the insured is not surprising when we learn that on this occasion of securing insured's application defendant's agents succeeded in securing similar applications from three other members of the insured's family, a circumstance which might well give rise to confusion and tend to inaccuracy. There appears to us to be no escape from the conclusion that the answers to questions put to insured in the application were not wilfully false or intentionally misleading as a matter of law, and that the fact question properly was submitted to the jury.

■ The defendant contends that the condition of unsound health, even though unknown to the insured, so affected the situation that the policy never in fact became an obligation of the defendant because of the clear breach of what defendant claims is a condition precedent. This condition precedent, denominated a "preliminary provision," occurs in different form in the application attached to the policy as well as in the policy itself. We are here interested in the provision in the policy which states:

"This policy shall not take effect if the insured die before the date hereof, or if on such date the insured be not in sound health, but in either event the premiums paid hereon, if any, shall be returned."

It is defendant's contention that under this clause the fact of unsound health is the controlling factor and avoids the policy even though such unsound health was unknown to the insured. Defendant reasons that the admitted ill health of the insured left nothing for the jury to pass upon in this case; that the question of the wilfully false and misleading character of the statements as to age, health, and family history mattered not at all inasmuch as the insured was in fact in ill health. We cannot concur in this reasoning.

In our view the statute affecting the nonmedical examination policies (1 Mason Minn. St. 1927, § 3396) here takes effect and states clearly the exact situation of the parties and the circumstances under which the policy might become void. The language in this section of the statute which provides that the statements shall be "valid and binding" must here be given a significant meaning. This law, intended and designed to protect the army of holders of nonmedical examination policies, cannot thus be circumvented by the insertion of a "preliminary provision" which frustrates the plain intent of the statute that the policy shall not be avoided unless the statements in the application are wilfully false or intentionally misleading. We agree that the company has a right to protect itself against uninsurable risks and that such may be accomplished in part by a medical examination and by independent investigation before the issuance of the policy. Where, however, the insurance company chooses to issue nonexamination policies, it can only do so subject to our statute, the effect of which cannot be avoided by the insertion in the policy of any "condition precedent" which attempts to destroy its meaning and effect. In Salts v. Prudential Ins. Co. 140 Mo. App. 142, 120 S. W. 714, the Missouri court, under a somewhat similar statute, took the same view that we are here expressing. In that case the statute provided that no misrepresentation made in obtaining a policy of life insurance shall render the policy void unless the matter misrepresented actually contributed to the event or contingency which matures the policy, namely, the death of insured. Insured stated in her application that she was in good health. A condition of the policy provided that the company assumed no obligation if insured was not in good health at the date of issuing the policy. On such date insured was not in fact in sound health, but such condition did not contribute to her death. The court allowed recovery on the policy on the ground that this condition precedent regarding sound health was an attempt to circumvent the statute and hence invalid. In Stephens v. Metropolitan L. Ins. Co. 190 Mo. App. 673, 176 S. W. 253, 254, the same statute was involved, and the policy provided that no obligation was assumed by the insurer unless the insured was in sound health at the

time of the issuance of the policy. The court said (190 Mo. App. 678):

"The rule of decision is established to the effect that the conditions in the policy [requiring insured to be in sound health at date of issuance of policy] are unavailing to the company, * * * for otherwise such condition would thwart the purpose of the statute and impinge the declared public policy of the state in respect of life insurance contracts."

We conclude that § 3396 and not § 3370 of 1 Mason Minn. St. 1927 governs this policy, that it does not appear as a matter of law that insured's statements in his application for insurance were wilfully false and intentionally misleading, that the jury's finding that the statements were not false or misleading is supported by the evidence, and that the alleged condition precedent is here unavailing to defendant.

Order affirmed.

*OLSEN, Justice,* took no part.

