STATE OF MINNESOTA

IN SUPREME COURT

A13-0186

Court of Appeals                                                          Wright, J.

Jacky L. Larson,

                    Appellant,

vs.                                                          Filed:  October 22, 2014
                                                             Office of Appellate Courts

The Northwestern Mutual Life Insurance Company,

                    Respondent,

CMInformation Specialists, Inc.,

                    Respondent.

_____

Katherine L. MacKinnon, Sarah J. Demers, Law Office of Katherine L. MacKinnon P.L.L.C., Saint Louis Park, Minnesota, for appellant.

Erik T. Salveson, Benjamin C. Johnson, Nilan Johnson Lewis, P.A., Minneapolis, Minnesota, for respondent The NorthwesternMutual Life Insurance Company.

Mark R. Bradford, Bassford Remele, P.A., Minneapolis, Minnesota, for respondent CMInformation Specialists, Inc.

Kelly W. Hoversten, Gray Plant Mooty, Minneapolis, Minnesota, for amicus curiae American Council of Life Insurers

Jenneane L. Jansen, Kris E. Palmer, Jansen & Palmer, LLC, Minneapolis, Minnesota, for amicus curiae Minnesota Association for Justice

_____

1

1.      To rescind a life insurance policy under Minn. Stat. § 61A.11 (2012) for "willfully false or intentionally misleading" answers in the insurance application, an insurer must prove that the insured intended to deceive the insurer. The insured's subjective intent may be established either by proof of the insured's actual intent to deceive or by inference when the insured had knowledge of material facts and failed to disclose those facts to the insurer.

2.      A patient does not have a private right of action under Minn. Stat. § 144.298, subd. 2 (2012), when a person releases fewer medical records than authorized by the patient's consent.

Affirmed in part, reversed in part, and remanded.

O P I N I O N

WRIGHT, Justice.

This dispute over the rescission of a life insurance policy presents two questions of statutory interpretation: (1) whether Minn. Stat. § 61A.11 (2012) requires subjective intent to deceive on the part of the insured in order to rescind a life insurance policy issued without a prior medical examination, and (2) whether Minn. Stat. § 144.298, subd. 2 (2012), creates a private right of action for the under-disclosure of medical records. With respect to the first question, we conclude that rescission of a life insurance policy under Minn. Stat. § 61A.11 requires proof of the insured's subjective intent to deceive. Because we conclude that there is a genuine issue of material fact regarding the subjective intent of the insured in this case, we reverse the district court's grant of

summary judgment for respondent The Northwestern Mutual Life Insurance Company and remand for further proceedings consistent with this opinion. Regarding the second issue, we conclude that a patient does not have a private right of action under Minn. Stat. § 144.298, subd. 2, when a person releases fewer medical records than authorized by a patient's consent. Therefore, we affirm the district court's grant of summary judgment in favor of respondent CMInformation Specialists, Inc.

I.

Appellant Jacky Larson was named as the sole beneficiary of a life insurance policy that her husband James Larson ("the insured") obtained from respondent The Northwestern Mutual Life Insurance Company in 2008. As part of Northwestern Mutual's application and underwriting process, the insured was required to answer questions about his medical history on two separate occasions. A paramedical examiner visited the insured's home on December 3, 2007, and asked him the questions on Northwestern Mutual's medical history questionnaire. The insured also completed a client history interview over the telephone with a representative from Northwestern Mutual on December 10, 2007. During each series of questions, the insured was asked whether he had a primary physician and whether he had "consulted any other healthcare providers" within the last five years. The insured also was asked if he had undergone any diagnostic studies or tests within the last five years. Each time, the insured identified his primary care physician at Fairview Ridges Clinic and acknowledged that he had seen a dermatologist. On each occasion, however, the insured failed to disclose that in late 2004 and early 2005, he visited a cardiologist and underwent a CAT scan angiogram because

he was experiencing chest pain. The medical history questionnaire specifically asked whether the insured had experienced or been tested for chest pain within the past ten years, to which the insured responded that he had not.

Northwestern Mutual also required the insured to consent to the release of all of his medical records. Northwestern Mutual's contractor requested the insured's "entire chart for [the] last seven years" from Fairview. Fairview's medical records contractor, respondent CMInformation Specialists, Inc., provided the insured's medical records from Fairview, but Fairview's medical records policy did not permit the release of non-Fairview records unless a Fairview physician had referred the patient to a non-Fairview facility or used the non-Fairview facility to treat the patient. Because of Fairview's policy, CMInformation did not disclose to Northwestern Mutual all of the insured's records that Fairview possessed. Among the items in the insured's medical records that CMInformation did not disclose were letters related to his consultation with a cardiologist and the results of his CAT scan angiogram.

Based on the information supplied in the insured's application, Northwestern Mutual's underwriter granted its approval of the life insurance policy that Northwestern Mutual issued in 2008. After the insured died in August 2008 from injuries sustained in a motorcycle accident, Jacky Larson made a claim on the life insurance policy. Because the insured died within the two-year contestability period, Northwestern Mutual conducted a routine investigation. In the course of that investigation, Northwestern Mutual discovered that the insured had failed to disclose that he had consulted with a cardiologist and undergone a CAT scan angiogram. Northwestern Mutual subsequently

4

informed Larson that it was rescinding the life insurance policy because it would not have issued the policy if the insured had disclosed this information. Northwestern Mutual refunded the amount of the premiums paid.

Larson sued Northwestern Mutual and CMInformation. Larson alleged that Northwestern Mutual breached the insurance contract by rescinding the life insurance policy and refusing to pay the death benefit. Larson also alleged that when CMInformation provided the insured's incomplete medical records to Northwestern Mutual, CMInformation violated Minn. Stat. § 144.293, subd. 10(c) (2012), by failing to comply with the limits of the consent the insured provided for the release of his medical records.[1] Larson argued that CMInformation's failure to release the letters indicating that the insured had consulted with a cardiologist was the basis for Northwestern Mutual's rescission of the life insurance policy.

At the close of discovery, Northwestern Mutual and CMInformation each moved for summary judgment. Northwestern Mutual argued that it was entitled to rescind the life insurance policy under Minn. Stat. § 61A.11 because the insured's inaccurate and incomplete responses to specific questions about his medical history, of which he had full knowledge, were willfully false or intentionally misleading. CMInformation argued that Minn. Stat. § 144.298, subd. 2, imposes liability only for unauthorized disclosures of protected information, and therefore, a patient does not have a cause of action when a person releasing medical records fails to release all of the records authorized for release.

---

[1] Larson's complaint also included a negligent misrepresentation claim against CMInformation that is not before us here.

The district court granted Northwestern Mutual's motion for summary judgment, concluding that the insured's knowledge of and failure to disclose the cardiology consultation and test made his statements willfully false or intentionally misleading as a matter of law. The district court also granted summary judgment in favor of CMInformation, concluding that a patient does not have a cause of action under Minn. Stat. § 144.298, subd. 2, unless the release of the patient's medical records exceeds the scope of the patient's consent.

Larson appealed, and the court of appeals affirmed. *Larson v. Nw. Mut. Life Ins. Co.*, No. A13-0186, 2013 WL 6050356 (Minn. App. Nov. 18, 2013). The court of appeals concluded that the answers the insured provided on the life insurance application were willfully false as a matter of law because they were "patently false" and given in response to specific questions. *Id.* at *5. Therefore, the insured's intent in giving those answers was irrelevant and summary judgment in favor of Northwestern Mutual was properly granted. *Id.* The court of appeals also concluded that summary judgment in favor of CMInformation was properly granted because Minn. Stat. § 144.298, subd. 2, does not provide a private right of action for withholding a medical record that the patient authorized to be released. *Larson*, No. A13-0186, 2013 WL 6050356, at *6.

We granted Larson's petition for further review.

II.

The first question presented for our review is whether the insured's failure to disclose the fact that he saw a cardiologist and had a CAT scan angiogram was "willfully

6

false or intentionally misleading" as a matter of law such that summary judgment for Northwestern Mutual and rescission of the life insurance policy were proper under Minn. Stat. § 61A.11.

For more than 100 years, Minnesota law has barred rescission of life insurance policies issued without a medical examination based on a misrepresentation in the insurance application, unless the representation is "willfully false or intentionally misleading." Minn. Rev. Laws § 1693 (1905). The relevant statutory language, which currently appears at Minn. Stat. § 61A.11, provides:

> In any claim upon a policy issued in this state without previous medical examination, or without the knowledge or consent of the insured, or, in case of a minor, without the consent of a parent, guardian, or other person having legal custody, the statements made in the application as to the age, physical condition, and family history of the insured shall be valid and binding upon the company, unless willfully false or intentionally misleading.

In other words, an insurer can rescind a life insurance policy issued without a medical examination based on an incorrect statement in the insurance application only if the statement was willfully false or intentionally misleading. *Schmidt v. Prudential Ins. Co. of Am.*, 190 Minn. 239, 241, 251 N.W. 683, 684-85 (1933); *Hafner v. Prudential Ins. Co. of Am.*, 188 Minn. 481, 484, 247 N.W. 576, 578 (1933). To determine whether rescission of the life insurance policy in this case was proper, we first consider whether the district court applied the correct legal standard. We then must decide, in light of the proper legal standard and the evidence in the record, whether summary judgment was properly granted.

7

A.

Larson argues that, under Minn. Stat. § 61A.11, Northwestern Mutual is required to prove that the insured actually intended to deceive the insurance company. Northwestern Mutual counters that it is required to prove only that the insured had knowledge of material facts and failed to disclose those facts to Northwestern Mutual during the insurance application process. The court of appeals concluded that the insured's subjective intent was "irrelevant" because the insured gave false answers to specific questions on the insurance application, and therefore, those answers were willfully false as a matter of law. *Larson*, No. A13-0186, 2013 WL 6050356, at *4-5. To resolve the dispute as to the applicable legal standard, we are asked to clarify whether the "willfully false or intentionally misleading" standard is a subjective one that requires proof of the insured's intent or an objective one that only requires proof that the insured had knowledge of material facts and failed to disclose them to the insurer.

Whether the "willfully false or intentionally misleading" standard requires proof of the insured's subjective intent to deceive presents a question of statutory interpretation, which we review de novo. *White v. City of Elk River*, 840 N.W.2d 43, 52 (Minn. 2013). We have interpreted the "willfully false or intentionally misleading" standard in several prior cases. In an early case addressing the issue, we explained that "[t]he manifest object of [Minn. Stat. § 61A.11] was to make the question of intent all important." *Schmidt*, 190 Minn. at 241, 251 N.W. at 684. We also have defined "a willfully false and intentionally misleading answer [as] one which is consciously made with a premeditated design so to falsify the facts as to lead the insurer to act where he otherwise would not;

8

willfully false denotes knowingly concealed." *Roeder v. N. Am. Life Ins. Co.*, 259 Minn. 168, 170, 106 N.W.2d 624, 627 (1960) (citing *Schmidt*, 190 Minn. at 242, 251 N.W. at 685).

Of great concern to us is the lack of clarity in Minnesota's legal standard attributable, at least in part, to two cases from the Eighth Circuit. The Eighth Circuit has interpreted our decision in *Howard v. Aid Ass'n for Lutherans*, 272 N.W.2d 910 (Minn. 1978), to stand for the proposition that "the phrase 'willfully false or intentionally misleading' as used in Minn. Stat. [§] 61A.11 does not *require* that there be an intent to deceive." *Ellis v. Great-West Life Assurance Co.*, 43 F.3d 382, 387 (8th Cir. 1994). Notably, the Eighth Circuit has concluded that "[w]hether it is necessary to demonstrate a subjective intent to deceive depends greatly upon the specificity and nature of the questions asked in the insurance application." *LeBus v. Nw. Mut. Life Ins. Co.*, 55 F.3d 1374, 1377 (8th Cir. 1995). But *Howard* did not reduce the "willfully false or intentionally misleading" standard to an objective one under which the only relevant question regarding the intent of the insured is whether the insured had knowledge of the facts and failed to disclose them to the insurer. Rather, *Howard* explained that a misrepresentation or omission is material if it "substantially affects or impairs an insurer's ability to make a reasonable decision to assume the risk of coverage" and that a willfully false or intentionally misleading statement need not be directly related to the insured's cause of death in order for the insurer to rescind the life insurance policy. 272 N.W.2d at 912-13. The question addressed in *Howard*—whether an insured's misstatement is material—is distinct from the question of whether an insured's

misrepresentation is willfully false or intentionally misleading. We, therefore, reject the characterization of the "willfully false or intentionally misleading" standard as objective and reaffirm that the intent of the insured is critical to the analysis under Minn. Stat. § 61A.11.

In light of our decisions emphasizing the importance of the insured's intent, we hold that evidence of the insured's subjective intent is required when an insurer seeks to rescind a policy under Minn. Stat. § 61A.11. An insurer may establish that the insured's answers were willfully false or intentionally misleading in either of two ways: (1) by proof of the insured's actual intent to deceive, or (2) by inference when the insured had knowledge of material facts and failed to disclose those facts to the insurer. *Cf. Iowa Kemper Ins. Co. v. Stone*, 269 N.W.2d 885, 887 (Minn. 1978) (stating that, for purposes of an intentional act exclusion, "intent may be established by proof of actual intent to injure, or when the character of the act is such that an intention to inflict an injury can be inferred").

### B.

Having concluded that the "willfully false or intentionally misleading" standard is a subjective standard that requires proof of the insured's intent to deceive, we next consider whether summary judgment was appropriately granted in favor of Northwestern Mutual. We review a district court's grant of summary judgment de novo to determine whether any genuine issue of material fact exists and whether the district court erred in applying the law. *Ruiz v. 1st Fid. Loan Servicing, LLC*, 829 N.W.2d 53, 56 (Minn. 2013). In doing so, we view the evidence in the light most favorable to the

nonmoving party. *Nicollet Restoration, Inc. v. City of St. Paul*, 533 N.W.2d 845, 847 (Minn. 1995). Summary judgment is "inappropriate when reasonable persons might draw different conclusions from the evidence presented." *DLH, Inc. v. Russ*, 566 N.W.2d 60, 69 (Minn. 1997). On a motion for summary judgment, the district court must not decide issues of fact; rather, it must determine whether genuine issues of fact exist for trial. *Id.* at 70.

In cases involving other types of insurance, we generally have considered whether an insured's misrepresentations were made with fraudulent intent to be a question of fact. *See, e.g.*, *Mack v. Pac. Mut. Life Ins. Co.*, 167 Minn. 53, 57, 208 N.W. 410, 412 (1926). Our jurisprudence addressing the "willfully false or intentionally" misleading standard similarly indicates that, at each procedural stage, whether an insured's statements were willfully false or intentionally misleading is a question of fact.[2] Therefore, it is

---

[2]  For example, in *Hammer v. Investors Life Insurance Co. of N. Am.*, 511 N.W.2d 6, 8-9 (Minn. 1994), after rejecting the district court's legal conclusion that a question in the insurance application was ambiguous, we determined that whether the insured's answers were willfully false or intentionally misleading or merely inaccurate was a question of fact. We reached this conclusion despite the fact that the insured responded untruthfully when asked specifically whether he had smoked in the preceding 12 months. We also have affirmed jury verdicts for beneficiaries when there is evidence that the insured acted without intent to deceive, despite giving an untruthful answer. *See, e.g.*, *Siemers v. United Benefit Life Ins. Co.*, 246 Minn. 459, 465, 75 N.W.2d 605, 609 (1956) (concluding that whether the insured's statements were willfully false or intentionally misleading was a question of fact because the insurance company had not asked for information about specific illnesses or symptoms but instead relied on the insured's opinion on the condition of his health); *Schmidt*, 190 Minn. at 241-42, 251 N.W. at 685 (affirming a jury verdict for a beneficiary, despite the fact that the insured had high blood pressure but represented that he was in good health and had never suffered from heart disease, because there was some evidence that the insured was unaware of his condition and therefore could not have intended to conceal it); *Elness v. Prudential Ins. Co. of Am.*,

(Footnote continued on next page.)

11

appropriate to remove the question of the insured's intent from consideration by the fact-finder at the summary judgment stage only if there is no genuine issue of material fact for trial. *See* Minn. R. Civ. P. 56.03. Put differently, only if there is conclusive evidence in the record that the insured knowingly concealed material facts may a district court find that the misrepresentations were willfully false or intentionally misleading as a matter of law. *See Nielsen v. Mut. Serv. Cas. Ins. Co.*, 243 Minn. 246, 254, 67 N.W.2d 457, 462 (1954) (affirming jury verdict and stating that "[w]e cannot hold that a misrepresentation was made with intent to deceive and defraud unless the evidence is conclusive").

The insurer bears the burden to show that an insured's misrepresentations were made with fraudulent intent. *See Sanne ex rel. Dahlke v. Metro. Life Ins. Co.*, 218 Minn. 181, 186, 15 N.W.2d 524, 526 (1944). Northwestern Mutual, therefore, has the burden to show that the insured's answers were willfully false or intentionally misleading. Here, there is no direct evidence in the record that the insured sought to deceive Northwestern Mutual. Therefore, in order to prevail on summary judgment, Northwestern Mutual was required to show that the only reasonable inference from the insured's omission of the information about his visits to a cardiologist is that he intended to deceive the insurance company. Viewing the evidence bearing on that issue in the light most favorable to

(Footnote continued from previous page.)
190 Minn. 169, 172-73, 251 N.W. 183, 185 (1933) (affirming a jury verdict for a beneficiary despite the insured's failure to disclose doctor visits when asked if he had been attended by a physician during the last three years because "[t]he jury may have believed that the insured acted in good faith and that omissions were thought to be of matters of no consequence").

12

Larson, a reasonable fact-finder could conclude that there was no intent to deceive because the insured disclosed his father's death at age 50 from heart disease and the insured may not have deemed the cardiologist consultation to be relevant given the "nonspecific" nature of the cardiologist's findings. However, without applying the summary judgment standard to the evidence, a reasonable fact-finder also could conclude that the insured intentionally excluded the information about the cardiologist to induce Northwestern Mutual to issue a life insurance policy. Given the volume of information that was asked of the insured during the application process and the fact that the insured authorized Northwestern Mutual to review *all* of his medical records, including the cardiologist's report, the insured's intent is a controverted fact. Because the evidence permits reasonable fact-finders to draw different conclusions about the insured's intent, we conclude that summary judgment was erroneously granted. We, therefore, reverse and remand to the district court for trial on the issue of rescission.

III.

We next consider whether Minn. Stat. § 144.298, subd. 2, creates a private right of action for the under-disclosure of medical records. Larson argues that CMInformation's failure to release the cardiologist's letters and CAT scan angiogram results from the insured's chart at Fairview was a violation of the Minnesota Health Records Act that is actionable under Minn. Stat. § 144.298, subd. 2, because the insured had signed a consent form giving Northwestern Mutual access to all of his medical records. CMInformation counters that the terms of Minn. Stat. § 144.298, subd. 2, permit a patient to sue only if the records released exceed the scope of the patient's consent. The court of appeals

13

concluded that a patient has a cause of action only for an unauthorized release, not for a withholding, of medical records. *Larson*, No. A13-0186, 2013 WL 6050356, at \*6.

Whether Minn. Stat. § 144.298, subd. 2, permits a patient to assert a private right of action for the incomplete disclosure of medical records also presents a question of statutory interpretation, which we review de novo. *White*, 840 N.W.2d at 52. The goal of statutory interpretation is to ascertain and effectuate the Legislature's intent. *Id.*; *see also* Minn. Stat. § 645.16 (2012). If the language of the statute is unambiguous, we apply its plain meaning. *White*, 840 N.W.2d at 53. A statute gives rise to a civil cause of action only if the language of the statute explicitly creates one or the language clearly implies that the Legislature intended to create a cause of action. *Becker v. Mayo Found.*, 737 N.W.2d 200, 207 (Minn. 2007). We construe nontechnical words and phrases according to their plain and ordinary meanings, *Staab v. Diocese of St. Cloud*, 813 N.W.2d 68, 72 (Minn. 2012), and we often look to dictionary definitions to determine the plain meanings of words, *State v. Heiges*, 806 N.W.2d 1, 15 (Minn. 2011).

The Minnesota Health Records Act, Minn. Stat. §§ 144.291-.298 (2012), includes three mechanisms for enforcement. The first provides that any violation of the Minnesota Health Records Act "may be grounds for disciplinary action against a provider by the appropriate licensing board or agency." *Id*. § 144.298, subd. 1. The third concerns liability for record locator services. *Id.*, subd. 3. Neither of these provisions is at issue here. Rather, it is the second enforcement mechanism—a private right of action for patients—that we address. Minnesota Statutes § 144.298, subd. 2, provides, in relevant part:

14

> A person who does any of the following is liable to the patient for compensatory damages caused by an unauthorized release or an intentional, unauthorized access, plus costs and reasonable attorney fees:
>
> (1) negligently or intentionally requests or releases a health record in violation of sections 144.291 to 144.297 . . . .[3]

We must determine whether releasing fewer medical records than authorized by a patient's consent constitutes an "unauthorized release" within the meaning of section 144.298, subdivision 2. Larson contends that CMInformation's incomplete release of the insured's medical records was an unauthorized release under Minn. Stat. § 144.298, subd. 2(1), because it breached the warranty in Minn. Stat. § 144.293, subd. 10(c) (2012). Minnesota Statutes § 144.293, subd. 10(c), provides that "[w]hen disclosing health records, a person releasing health records warrants that the person . . . has complied with the limits set by the patient in the consent."[4] The primary dispute between the parties is whether CMInformation's failure to release some of the medical records covered by the insured's patient consent form constitutes an "unauthorized release" that does not comply with "the limits set by the patient in the consent."

---

[3]  In 2012, the Legislature amended Minn. Stat. § 144.298, subd. 2, to add "or an intentional, unauthorized access" and a fourth item in the list of violations that can give rise to liability. Act of Apr. 28, 2012, ch. 247, art. 2, § 5, 2012 Minn. Laws 853, 883. Because we apply the version of the statute in effect at the time the cause of action arose, *see Florenzano v. Olson*, 387 N.W.2d 168, 172 n.1 (Minn. 1986), the 2012 amendments to Minn. Stat. § 144.298, subd. 2, are not germane to our analysis here.

[4]  According to Minn. Stat. § 645.44, subd. 7 (2012), the word " '[p]erson' may extend and be applied to bodies politic and corporate, and to partnerships and other unincorporated associations."

The plain meaning of these provisions is that *withholding* records does not constitute a "release" within the meaning of Minn. Stat. § 144.298, subd. 2, and, therefore, is not actionable. The court of appeals adopted this view and concluded that, in order to be liable for damages under Minn. Stat. § 144.298, subd. 2, a person must affirmatively release a record that was not authorized for release by the patient's consent. *Larson*, No. A13-0186, 2013 WL 6050356, at *6. We agree. To "release" means "[t]o set free from . . . [or] let go" or "[t]o make available for use." *The American Heritage Dictionary of the English Language* 1483 (5th ed. 2011); *see also Webster's Third New International Dictionary* 1917 (2002) (including to "let go" among definitions of "release" and listing "surrender" and "relinquish" as synonyms of "release"); *The New Shorter Oxford English Dictionary* 2536 (1993) (defining "release" as "[T]he action of making available for publication a document or piece of information"). Under any of these definitions of "release," the facts presented here—in which an entity releases some health records as authorized by the patient, even though that entity was authorized to release more—are not actionable. We reach this conclusion because the health records at issue here were not actually released. CMInformation had the insured's consent to release those records that it did release. The only question before us is whether CMInformation is liable for *failing to release* the cardiologist's letters and CAT scan angiogram report. Because, under the plain meaning of the statute, liability arises only when a person or entity actually discloses a health record in violation of another provision of the Minnesota Health Records Act, CMInformation cannot be liable here.

16

Accordingly, the district court properly granted summary judgment in favor of CMInformation.

IV.

In summary, we conclude that the insured's subjective intent is critical to deciding whether an insurer can rescind an insurance policy under Minn. Stat. § 61A.11. Here, because there are genuine issues of material fact as to the insured's intent, summary judgment for Northwestern Mutual was improperly granted. We, therefore, reverse and remand to the district court for further proceedings on this claim. However, because CMInformation's failure to release all of the records authorized by the insured's consent is not actionable under Minn. Stat. § 144.298, subd. 2, we affirm the district court's grant of summary judgment in favor of CMInformation.

Affirmed in part, reversed in part, and remanded.