*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1849**

Wolf, Rohr, Gemberling & Allen, P. A.,
Respondent,

vs.

Margots Kapacs,
Appellant.

**Filed June 20, 2016
Affirmed
Hooten, Judge**

Hennepin County District Court
File No. 27-CV-15-7833

Sarah B. Quigley, Quigley Law Firm, PLLC, Minneapolis, Minnesota (for respondent)

Margots Kapacs, Minneapolis, Minnesota (pro se appellant)

Considered and decided by Hooten, Presiding Judge; Worke, Judge; and Smith, Tracy, Judge.

## U N P U B L I S H E D   O P I N I O N

**HOOTEN**, Judge

In this attorney fee dispute, appellant challenges the district court's order granting summary judgment in favor of respondent law firm, arguing primarily that the law firm was required to obtain his consent before providing further services once his retainer was exhausted. We affirm.

**FACTS**

In July 2013, appellant Margots Kapacs retained respondent Wolf, Rohr, Gemberling & Allen, P.A. (law firm) to represent him in marital dissolution proceedings. Kapacs and the attorney who was to represent him signed a retainer agreement (agreement) and, in accordance with the agreement, Kapacs paid the law firm an initial retainer of $3,500. The agreement provided that in the event that the retainer was depleted, Kapacs "may be notified of the need for an additional advance fee retainer." Kapacs paid an additional $1,200 to the law firm to be used as a retainer for the services of a financial consultant in connection with the dissolution. As of January 2014, the law firm had exhausted the initial retainer that Kapacs had paid. In February 2014, the law firm submitted a bill to Kapacs that reflected services it had provided after the retainer had been exhausted. The law firm withdrew from representing Kapacs in March 2014 as a result of Kapacs' failure to pay the bill. After a number of communications regarding the correction of an error in the bill, Kapacs sent two emails to the law firm in July 2014, in which he stated, "[The bill] is on my list to pay" and "I am accepting all [of] the bill," with the exception of one item that is not at issue in this appeal.

The law firm initiated an action in conciliation court to recover the amount of the outstanding bill and obtained a judgment in the amount of $3,546.61. Kapacs appealed the conciliation court's judgment to district court, and the law firm moved for summary judgment. In response to the law firm's motion, Kapacs argued that he was not liable for the attorney fees, alleging primarily that, after exhausting his retainer, the law firm was required to receive his consent before providing further services. The district court granted

2

summary judgment in favor of the law firm and ordered that judgment be entered in favor of the law firm in the amount of $3,546.61 plus interests and costs. This appeal followed.

## D E C I S I O N

"[Appellate courts] review a district court's grant of summary judgment de novo to determine whether any genuine issue of material fact exists and whether the district court erred in applying the law." *Larson v. Nw. Mut. Life Ins. Co.*, 855 N.W.2d 293, 299 (Minn. 2014). To defeat summary judgment, the nonmoving party must do more than "create[] a metaphysical doubt as to a factual issue" or "rest on mere averments." *DLH, Inc. v. Russ*, 566 N.W.2d 60, 71 (Minn. 1997). We review the evidence in the light most favorable to the party against whom summary judgment was granted. *McIntosh Cty. Bank v. Dorsey & Whitney, LLP*, 745 N.W.2d 538, 545 (Minn. 2008).

**Consent**

Kapacs argues that the district court erred by granting summary judgment to the law firm because the law firm was required, after exhausting the initial retainer, to obtain his consent before providing any additional services. In connection with this argument, Kapacs argues that the agreement is ambiguous regarding whether he would be notified that the initial retainer had been exhausted and required to replenish it before further services would be provided by the law firm.

"[T]he primary goal of contract interpretation is to determine and enforce the intent of the parties." *Motorsports Racing Plus, Inc. v. Arctic Cat Sales, Inc.*, 666 N.W.2d 320, 323 (Minn. 2003). We determine the parties' intent from the plain language of the instrument and will not rewrite the contract when its plain meaning is unambiguous.

3

*Dorsey & Whitney LLP v. Grossman*, 749 N.W.2d 409, 418 (Minn. App. 2008). A contract is ambiguous if it is "susceptible to more than one reasonable interpretation." *Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 832 (Minn. 2012).

In granting summary judgment to the law firm, the district court stated that the agreement did not require the law firm to notify Kapacs of the exhaustion of the retainer or contain any language suggesting that Kapacs was required to pay an additional retainer in order to continue receiving legal services. We agree.

Paragraph 13 of the agreement, titled "Subsequent Retainers," provides that "[w]hen little to no money remains credited to your account, you may be notified of the need for an additional advance fee retainer." The paragraph further states, "In the event your initial retainer is depleted and we fail to request a subsequent retainer, you agree to pay the outstanding balance on each monthly statement unless specified in a separate written agreement." Kapacs' argument that the agreement is ambiguous stems primarily from the fact that the agreement states that a client "*may be* notified of the need for an additional retainer" if the initial retainer is exhausted. (Emphasis added.) While Kapacs is frustrated by the fact that the agreement allows the law firm the option of requesting an additional retainer, the mere fact that it is within the discretion of the law firm under the agreement whether to request an additional retainer does not render the agreement ambiguous or invalid.

Kapacs notes that paragraph 12 of the agreement, titled "No Client Credit," states: "We do not loan money or extend credit to our clients. Therefore, there must be a sufficient balance on your retainer to cover the firm's estimate of the costs of completing the next

4

major steps in your case." Kapacs interprets this provision as meaning that no advance services will be provided unless a sufficient balance of the retainer remains. Kapacs' interpretation is undermined, however, by the next sentence, which provides that "[a]ll balances on your account are due 15 days after the date of the statement." If Kapacs' interpretation were correct, there would never be a need for clients to pay monthly bills for services because there would always have to be sufficient funds remaining in the retainer to cover the services provided by the law firm. Moreover, the sentence Kapacs relies upon does not state that the law firm will stop providing services if there is an insufficient balance in the retainer to cover services or indicate that the client must consent to any future services as soon as the retainer is exhausted. Finally, the language Kapacs relies on is qualified by the fact that it only requires a balance in the retainer sufficient to cover the costs of the "next major steps" in the client's case. This sentence is not sufficient to create ambiguity regarding whether the law firm was required to get the client's consent before providing services after the exhaustion of the retainer.

Kapacs argues that he was assured by the attorney representing him that he would be given a warning before the initial retainer was exhausted and given 30 days before being required to replenish the retainer. Even if the attorney made such an oral representation, the agreement provides that it "contains the entire agreement between [Kapacs] and [the law firm] regarding this matter and the fees, charges and expenses to be paid relative thereto." The agreement further provides that it was not to be modified "except by written agreement signed by [Kapacs] and a representative of the firm." Because Kapacs provides no evidence that he and a representative of the law firm signed a document altering the

5

terms of the agreement as he claimed, his argument about the attorney's alleged oral representation is without merit.

**Breach of the Agreement**

Kapacs argues that the district court erred by granting summary judgment in favor of the law firm because the law firm breached the agreement. "The elements of a breach of contract claim are (1) formation of a contract, (2) performance by plaintiff of any conditions precedent to his right to demand performance by the defendant, and (3) breach of the contract by defendant." *Lyon Fin. Servs., Inc. v. Ill. Paper & Copier Co.*, 848 N.W.2d 539, 543 (Minn. 2014) (quotation omitted).

Kapacs first asserts that the law firm breached the agreement by not providing notice that he needed to replenish the retainer before rendering further services and by providing no opportunity for him to consent before the services were rendered. As discussed above, however, the agreement unambiguously states that the law firm "may" request an additional retainer after the initial retainer is exhausted and that if the law firm does not request an additional retainer, the client agrees to pay the outstanding balance on the monthly statements. As such, the law firm did not breach the agreement by not requesting an additional retainer upon the exhaustion of the initial retainer and continuing to provide legal services.

Next, Kapacs argues that the law firm breached the agreement by "failing to provide the correct and complete invoices for more than [six] months." This argument refers to the fact that the law firm mistakenly billed Kapacs twice for the fee paid to retain the financial consultant. Though Kapacs claims that it took more than six months to correct the bill, this

6

assertion is not supported by the record, which indicates that the law firm was made aware of the error in late March 2014 and corrected it by May 9, 2014. Moreover, Kapacs fails to put forth any facts or law indicating that this billing error, which was corrected less than a month and a half after it was discovered, amounts to a breach of the agreement.

**Poor Representation**

Kapacs argues that he was poorly represented by the law firm in the dissolution proceedings and received little benefit from its services. Kapacs argues that the law firm represented him poorly because he was not able to see his children as much as he wished during the proceedings, the law firm did not adequately defend the attacks of his wife's counsel, and the law firm did not inform him about meetings and deadlines. The only evidence Kapacs points to in support of these allegations is one email exchange between Kapacs and the law firm regarding his thoughts on parenting time, but this evidence does not indicate that the law firm's representation was inadequate.[1] Furthermore, Kapacs fails to point out *any* evidence showing that the allegedly flawed representation of the law firm led to any of the unfavorable outcomes he experienced during the dissolution proceedings. As Kapacs has failed to do more than "rest on mere averments," *DLH*, 566 N.W.2d at 71, the law firm's allegedly deficient performance is not a reason to conclude that the district court erred in granting summary judgment.

---

[1] Kapacs also points to two other emails included in his brief's addendum where he expresses his dissatisfaction with the parenting time arrangements to the law firm. However, as these emails were not part of the district court record, we will not consider them on appeal. Minn. R. Civ. App. P. 110.01 ("The documents filed in the trial court, the exhibits, and the transcript of the proceedings, if any, shall constitute the record on appeal in all cases.").

**Due Process Rights**

Kapacs argues that the district court violated his constitutional due process rights because he was provided no opportunity to be heard or to contest statements made by the law firm. After the law firm moved for summary judgment, Kapacs filed a responsive memorandum with the district court. Pursuant to Minn. R. Gen. Pract. 115.03, the law firm filed a reply memorandum and a supplemental reply memorandum. Kapacs argues that he was denied his due process rights because he was denied his right to respond to the law firm's reply memoranda. Minn. R. Gen. Pract. 115.03 does not, however, provide that a nonmoving party must be allowed the opportunity to respond to the moving party's reply memoranda. Kapacs essentially argues that a party's due process rights are violated if a party is not *always* granted the opportunity to respond to the opposing party's argument, despite the fact that such a premise would result in a never-ending circle of responsive memoranda. Because there is no requirement that Kapacs be allowed to respond to the law firm's reply memoranda, the district court did not violate Kapacs' due process rights.


**Professional Responsibility**

Kapacs argues that the law firm failed to uphold "the requirements of professional responsibility." Because Kapacs failed to raise this argument to the district court, we will not consider it. *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) ("A reviewing court must generally consider only those issues that the record shows were presented and considered by the trial court in deciding the matter before it." (quotation omitted)).

8

**Breach of Good Faith**

Kapacs argues that the law firm forfeited its right to compensation by breaching its duty of good faith. Kapacs' contention that the law firm did not act in good faith is premised on his argument that the law firm was required to receive his consent before rendering any further legal services once the retainer was exhausted. As discussed above, however, the agreement did not require that Kapacs consent before the law firm provide further legal services. We conclude that this argument is without merit.

**Unreasonable Legal Fees**

Kapacs argues that the district court erred in granting summary judgment to the law firm because the legal fees he incurred were unreasonable or out of proportion to the legal services he received. The law firm provided Kapacs with itemized bills detailing the services it provided to him, and Kapacs does not argue that the law firm did not provide these services or that such services were unnecessary for his representation. Additionally, Kapacs does not argue that the law firm charged unreasonable hourly fees. Rather, Kapacs argues that it is unreasonable for him to have to pay more than $8,000 when the law firm only "attended one 30 min[ute] initial hearing at [f]amily court, had a 2.5 [hour] meeting with the [child] custody evaluators at city hall and did some correspondence."

The itemized bills demonstrate, however, that in its representation of Kapacs the law firm drafted numerous documents, prepared for hearings, communicated extensively with opposing counsel and the district court, and appeared on Kapacs' behalf at the initial case management conference and the financial early neutral evaluation. Additionally, paragraph 10 of the agreement requires that Kapacs contact the law firm within 30 days of

receipt of a bill regarding any complaints regarding the charges on his statement and that failure to do so would result in Kapacs' agreement that he owe the amounts reflected in the statement. Despite this requirement, Kapacs never objected to the bill and in fact admitted in his July 2014 emails that he was accepting all of the bill and that the bill was on his list to pay. Moreover, a party must do more than "rest on mere averments" to defeat a motion for summary judgment, *DLH*, 566 N.W.2d at 71, but Kapacs merely alleges that the fees are unreasonable without providing further argument or evidence. Because Kapacs has failed to establish that a genuine issue of material fact exists or that the district court erred in applying the law, we conclude that the district court properly granted summary judgment in favor of the law firm.

**Arguments in Reply Brief**

While Kapacs raises new arguments in his reply brief, a reply brief "must be confined to new matter raised in the brief of the respondent." Minn. R. Civ. App. P. 128.02, subd. 4. "If an argument is raised in a reply brief but not raised in an appellant's main brief, and it exceeds the scope of the respondent's brief, it is not properly before this court and may be stricken from the reply brief." *Wood v. Diamonds Sports Bar & Grill, Inc.*, 654 N.W.2d 704, 707 (Minn. App. 2002), *review denied* (Minn. Feb. 26, 2003). Because the arguments were not presented in Kapacs' principal brief, we will not consider them.

**Affirmed.**